IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GLYNN HARTT, individually and on behalf of all others similarly situated | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 10-cv-0822(NS) |
| | : | |
| FLAGSHIP CREDIT CORPORATION | : | |

**PLAINTIFF'S MEMORANDUM OF LAW
REGARDING ISSUES OF FIRST IMPRESSION UNDER TEXAS LAW**

In response to this Court's directive at the hearing on April 12, 2010 and the Court's written order of April 13, 2010, Plaintiff Hartt hereby submits his Memorandum of Law to address the purported issues of first impression raised by Defendant Flagship in its Memorandum of Law filed on April 16, 2010.   Several of the issues raised by Flagship do not involve disputes as to the law, and most of the remaining issues are either not issues of first impression or their resolution is readily apparent.

> **A.      There is no Conflict in Texas Caselaw on the Application of the Absolute Bar Rule and, Thereby, no Issue of First Impression to Resolve.**

Flagship admitted in its memorandum that Texas applies an absolute bar rule which precludes creditors from recovering a judgment for a deficiency when proper notice of intended disposition was not given, citing to *Tanenbaum v. Economics Laboratory, Inc*., 628 S.W.2d 769, 772 (Tex. 1982) and *Greathouse v. Charter National Bank - Southwest*, 851 S.W.2d 173 (Tex. 1992).  (Def. br. at 2-5).  Assuming that rule applies in the instant case, Flagship would have no counterclaim or offset to raise against Plaintiff or the putative class.

Flagship, however, argues that there is a potential unresolved conflict in Texas law between *Tanenbaum* and *Greathouse*, on the one hand, and another Texas Supreme

Court case, *First City Bank - Farmers Branch v. Guex*, 677 S.W.2d 25, 29 (Tex. 1984). Flagship asserts that *Guex*, a case in which the debtor sued a creditor for UCC violations as a plaintiff, specifically held that creditors may raise deficiencies as offsets when debtors bring affirmative claims and seek minimum damages under Tex. Bus. & Com. Code § 9.625(c)(2). Flagship relies on the following quote from *Guex* at 29:

> . . . the correct rule of law is stated in *Garza* . . . that although he [the debtor] did not prove any damages resulting from Credit Union's non-compliance with the notice requirement, he [was] nevertheless entitled to an offset against the deficiency on the car note based on the 'minimum damage formula' in § 9.507(a) . . . ." *Id.*

In short, based solely on this quote, Flagship argues that the absolute bar rule applies when a creditor files a deficiency action as a plaintiff, but this rule does not apply when a debtor files suit for UCC violations as a plaintiff. This proposition, however, is simply wrong, because Flagship misreads the quote in *Guex* and fails to explain the circumstances of the case being cited. Since *Guex* does not actually stand for the proposition asserted by Flagship, there is no conflict between Texas Supreme Court decisions and no issue of first impression to resolve.

First, Flagship omits the context from which the quote was drawn. The quote from *Guex* is a part of the opinion addressing a different issue: whether there can be an award of statutory minimum damages absent harm to the debtor. *Id.* The creditor in *Guex* argued that there could be no award of statutory minimum damages to the debtor absent some proof of actual damages, but the Texas Supreme Court held that "the drafters of the Uniform Commercial Code intended . . . to penalize the secured party if the debtor suffered no losses or his losses were less than the statutory penalty." *Id* at 29. The rule of law in *Garza* was merely being cited to confirm that statutory minimum damages were

available even when the debtor failed to establish any actual damages flowing from non-compliance with the UCC.

Second and more importantly, the case being cited in the quote, *Garza v. Brazos County Federal Credit Union*, 603 S.W.2d 298 (Tex. Civ. App. - Waco 1980, no writ), does not even stand for the proposition that deficiencies can always be raised as offsets to statutory minimum damages awards.   In *Garza*, a debtor was sued by a credit union for a debt arising from a personal loan and an automobile loan, and the portion of the debt arising from the automobile debt was the deficiency remaining following the sale of the collateral after a repossession.   *Id*. at 298.   At trial, the *pro se* debtor only complained that he was not given notice of this disposition.   *Id*. at 299.

On appeal, the Court of Appeals alluded to two lines of cases, one applying an absolute bar to deficiency judgments when notice was not given and another applying a rebuttable presumption that the value of the collateral equals the amount of the debt.   *Id*. at 300.   The Court of Appeals then observed that this "question is not before us because Garza does not assert that the want of notice bars recovery of a deficiency judgment by Credit Union . . . [as] [h]e contends only that although he did not prove any damages resulting from Credit Union's noncompliance with the notice requirement, he is nevertheless entitled to an offset against the deficiency on the car note based upon the minimum damage formula in § 9.507(a) . . . ."   *Id.*   In other words, the debtor had *waived* any defense based on the absolute bar rule.   Since he had waived that defense, the only issue to decide was the creditor's assertion at trial that minimum damages were unavailable in the absence of any actual damages resulting from the failure to give notice, and the Court of Appeals in *Garza* disagreed with the creditor's argument.   *Id.*

In short, *Garza* determined that a debtor defendant may use the minimum damages formula as a defensive offset against deficiency damages even when the debtor has failed to assert the absolute bar rule.   This is precisely the opposite of what Flagship contends in this case, that a creditor may avoid the absolute bar rule, even when raised, when a debtor raises UCC violations as a plaintiff.   Given Flagship's misreading of *Guex* and *Garza*, there is no apparent conflict between *Guex*, on the one hand, and *Tanenbaum/Greathouse*, on the other.   These Supreme Court decisions are not contradictory.   In any case, there is no issue of first impression here which would require the Court to navigate through uncharted territory.

**B.     The 1999 Amendments to Article 9 of the Texas UCC did not Repeal the Absolute Bar Rule in Consumer Debt Cases.**

In its memorandum, Flagship states that it "reserves for later discussion the applicability of the absolute bar rule under the 1999 revisions of [Article] 9 of the Texas Business & Commerce Code, an issue not addressed by Texas case law."   Flagship appears to suggest the 1999 amendments to Article 9 of the Texas UCC may have vitiated the applicability of the absolute bar rule to consumer deficiency judgments. (Def. br. at 5)  While Hartt admits that there are no cases construing the absolute bar rule after the 1999 amendments became effective in 2001, that is easily explained by the clarity of the statutory amendments and the unanimous recognition of the bar rule prior to the amendments.     Under the current Texas UCC following the 1999 amendments, the rebuttable presumption rule applies in commercial debt cases when Article 9 has been violated, Tex. Bus. & Com. Code § 9.626(a)(applied to "a transaction, other than a consumer transaction").   But Tex. Bus. & Com. Code § 9.626(b) provides the applicable rule in consumer transactions is left to the courts and the courts "may continue to apply

established approaches." Based on this language, the State Bar Committee Comment on new section 9.626 specifically states that "[t]he 'absolute bar' rule remains the law in Texas in consumer transactions."[1] More importantly, given that the Texas Supreme Court applied the absolute bar rule at least twice before the rule change, see *Tanenbaum* and *Greathouse*, the likelihood that this rule would continue to be applied to consumer transactions is extremely high, especially given the legislative permission to "continue to apply established approaches." While technically there is no ruling on the continued application of the absolute bar to consumer transactions, the statutory language and the State Bar Committee's comment strongly suggest that the rule will continue to be applied to consumer transactions. That may explain why Flagship did not fully brief this matter as a purported issue of first impression.

### C. The Burden of Establishing the "Consumer" Predicate for Minimum Damages is Placed Squarely on the Plaintiff.

Next, Flagship points out that commercial debtors must prove actual damages arising from UCC notice violations and that only consumer debtors may recover the minimum damages being sought by Hartt and the putative class. Then, Flagship suggests that there is a possible issue of first impression on what party has the burden of establishing the "consumer" nature of the underlying debt, because there is no Texas Supreme Court precedent on the issue. (Def. br. at 5-6). While there is no Texas Supreme Court ruling on this issue, there are two intermediate appellate opinions finding that the burden of establishing the "consumer" predicate is placed on the party seeking to recover minimum statutory damages. *Bundrick v. First National Bank of Jacksonville*, 570 S.W.2d 12, 18-19 (Tex. Civ. App. - Tyler 1978, no writ); *Hensley v. Lubbock*

---

[1]     A copy of Tex. Bus. & Com. Code § 9.626 is appended. The State Bar Committee Comment follows the statutory text. O'CONNOR'S BUSINESS & COMMERCE CODE PLUS, 619-21 (2008-09)

*National Bank*, 561 S.W.2d 885, 892 (Tex. Civ. App. - Amarillo 1978, no writ).   Hartt further admits that it is Plaintiff's burden to prove this "consumer" predicate to obtain minimum statutory damages under Section 9.625(c)(2). As a consequence, there is no real issue of law that even needs resolution.

To the extent that Flagship is suggesting that proof of consumer status would involve multiple individual determinations, it is addressing the issue of class certification which is not yet before the Court.   Nevertheless, most retail installment contracts in Texas, including Hartt's, indicate on their face whether the purpose of the automobile financing was personal, family or household-related, on the one hand, or business or commercial-related, on the other hand, so this issue can be addressed simply.

**D.     Substantial Compliance is not Sufficient for Notices of Disposition in Consumer Transactions.**

Flagship attacks Hartt's assertion in a previous brief that "[i]f the notification in a consumer goods transaction lacks any of the required information, it is insufficient as a matter of law." Flagship asserts that Hartt relies upon a treatise that ultimately upon an official comment.   In Flagship's opinion, the comment is not controlling and Flagship asserts there are cases prior to the 1999 amendments recognizing substantial compliance as sufficient.   At a minimum, Flagship suggests that whether the 1999 amendments to Article 9 of the Texas UCC permit substantial compliance is an issue of first impression under Texas law. (Def. br. at 6-7).   Hartt submits that there is not much doubt about how this issue would be decided by a Texas court.

First, official comment 2 following current section 9.614, the statute setting the standard for notices of disposition in consumer transactions, specifically states that "[a] notification that lacks any of the information set forth in paragraph (1) is insufficient as a

matter of law." While Flagship is correct that UCC official comments have not been enacted by the Texas Legislature, the Texas Supreme Court has nevertheless ruled that they "serve as a valuable aid in construing the statutory language." *Exxon Mobil Corporation v. Gill*, 299 S.W.3d 124, 126 (Tex. 2010); *Romo v. Austin National Bank*, 615 S.W.2d 168, 171 n. 2 (Tex. 1981).

Second, the statutory language on notice following the 1999 amendments to the Texas UCC is clear. Section 9.613(3), which applies only to commercial transactions, provides that substantial compliance is enough, but section 9.614, which applies to consumer transactions, has no such language. In fact, section 9.614(1), which applies to consumer transactions, expressly states the notice in consumer transactions "must" provide certain prescribed information, while section 9.613(1), which applies to commercial transactions, only states that the contents of a notice is "sufficient" if certain information is included. The very clarity of this statutory language, together with the straightforward interpretation of the official comment, may well have discouraged any claims that substantial compliance was sufficient with consumer notices. Where the statutory language coupled with official comment make a statute's direction clear, a novel interpretation by a party does not thereby create an "issue of first impression" that would pose any jurisprudential difficulty.

Third, the cases cited by Flagship at p. 7 really carry no weight. See *FDIC v. Lanier*, 926 F.2d 462 (5th Cir. 1991) and *Carroll v. Kennan*, 734 S.W.2d 34 (Tex. Civ. App. - Waco 1987, no writ). Neither was decided after the 1999 amendments substantially changed the required notice, and *Lanier* involved a commercial debt unlike the consumer debt at issue in this case. There is no authority in the consumer context for

a "substantial compliance" test.  Moreover, neither is there suggestion nor evidence that the challenged repossession notice (which Flagship asserted at hearing was sent to approximately 900 consumers) substantially complied; it did not. *Cf.*, Am. Complt, ¶ 22, 23.

### E.   Flagship's Final Point Raises no Issue of First Impression.

Finally, Flagship takes exception to Hartt's assertion in a previous brief that "statutory damages are both uniform and intended . . . regardless of whether actual damages are greater, lesser or even absent."   Flagship appears to imply that Hartt is seeking both actual damages and statutory damages, a form of double relief  which is prohibited by *Guex*,677 S.W.2d at 30.   A review of Hartt's Amended Complaint in this Court, however, indicates that Hartt is seeking only statutory damages on behalf of himself and the putative class.   This is not an issue, much less an issue of first impression.

In addition, Flagship suggests that, if the class only seeks statutory damages for the class, *res judicata* would bar those members of the class with potential actual damages in excess of the formula from recovering any more than the statutory minimum. Flagship is merely crying crocodile tears over the purported denial of full relief to some possible members of the putative class that might be entitled to relief in excess of the minimum uniform damages afforded by the UCC § 9.625.   Proper class action procedures, which Hartt expects this Court would follow, afford protections for class members in this situation.   Specifically, notice to any damages class under Rule 23(b)(3) must give all members of the class an option to opt out.  F.R.Civ.P. 23(c)(2)(B).   To the extent that any member of a certified class has actual damages in excess of the statutory

minimum formula, that person will therefore be entitled to opt-out and pursue that relief in an individual case.

Finally, based upon the evidence adduced at the April 12, 2010 hearing and review of selected copies of (redacted) contracts produced to Plaintiff thereafter, it appears that the amount in controversy exceeds $5 million dollars. Plaintiff does not, therefore, plan to move for remand.  *Cf.,* Order, April 13, 2010, ¶ 3.

**F.     Conclusion**

For the foregoing reasons, Hartt submits that there are no issues of first impression presented.

Respectfully submitted:


Date:   04/21/10                              */s/ Cary L. Flitter (CLF5997)*
                                             CARY L. FLITTER
                                             THEODORE E. LORENZ
                                             ANDREW M. MILZ

                                             **LUNDY, FLITTER, BELDECOS
                                             & BERGER, P.C.**
                                             450 N. Narberth Avenue
                                             Narberth, PA  19072
                                             (610) 822-0782

                                             Richard Tomlinson, *pro hac vice*
                                             3100 Timmons Lane, Suite 100
                                             Houston, Texas 77027
                                             (713) 627-2100
                                             Fax: (713) 627-2101

                                             **Attorneys for Plaintiff**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

Plaintiff

vs.

FLAGSHIP CREDIT CORPORATION,

Defendant.

CIVIL ACTION NO. 10-CV-00822(NS)

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2010, I have electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which sent notification of such filing to:

Marc J. Sonnenfeld, Esquire
John P. Lavelle, Jr., Esquire
Iddo Harel, Esquire
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921

Said document is available for viewing and downloading from the ECF system.

Date: 04/21/10                    /s/ Cary L. Flitter (CLF5997)
                                 CARY L. FLITTER