**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLYNN HARTT,** | : | **CIVIL ACTION** |
| **individually and on behalf of all** | : | |
| **others similarly situated,** | : | |
| | : | |
| **v.** | : | **No. 10-822** |
| | : | |
| **FLAGSHIP CREDIT CORPORATION,** | : | |
| **Defendant.** | : | |

**MEMORANDUM**

**NORMA L. SHAPIRO, S.J.**                              **JULY 7, 2010**

Plaintiff, Glynn Hartt, brought this putative consumer class action against defendant,

Flagship Credit Corporation ("Flagship"), for violations of the Texas Business & Commercial

Code § 9.601, *et seq.* Flagship is an automobile-finance company. Hartt and the putative class

allege that Flagship systematically failed to provide requisite notices of repossession or

statutorily required notices in connection with the repossession and resale of financed vehicles as

required by the Tex. Bus. & Com. Code. Hartt defines the class as all persons: (1) with addresses

within the State of Texas; (2) who financed a vehicle with Flagship primarily for consumer use,

and pledged the vehicle for a loan; (3) from whom Flagship repossessed the vehicle or caused it

to be repossessed; (4) who were sent a deficient notice in the period commencing December 10,

2005 through the date of class certification. (See Pl. Compl. ¶ 29).

**BACKGROUND**

Hartt filed this putative class action in the Court of Common Pleas, Philadelphia County

on or about December 10, 2009. Flagship removed the action to the United States District Court

for the Eastern District of Pennsylvania based on 28 U.S.C. § 1332 and § 1441, as amended in

relevant part by the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. §§ 1332(d)(2)(A),

(d)(5)(B).  Hartt did not challenge removal.  Following removal, the court ordered a rule to show cause addressing the factual basis for removal and the appropriateness of transfer to Texas under 28 U.S.C. § 1404.  By order of April 13, 2010, the court ordered that discovery be stayed pending decision on subject-matter jurisdiction and transfer.

## DISCUSSION

**1.    Subject Matter Jurisdiction**

It is the responsibility of the court to inquire, *sua sponte*, into subject matter jurisdiction even when removal is not challenged.  *See, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (subject matter jurisdiction can be raised by the court or the parties at any stage in litigation); *Huber v. Taylor*, 532 F.3d 237, 249 (3d Cir. 2008) (court must *sua sponte* determine subject matter jurisdiction).  Removal is proper under CAFA when defendant can prove that: (a) any member of the putative class is a citizen of a state different from any defendant; (b) the number of members of all proposed plaintiff classes in the aggregate is more than 100; and (c) the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B).  The removing party asserting federal jurisdiction bears the burden of showing that the action is properly before the federal court.  *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007).

A.    Diversity

Hartt is a citizen of Texas, and the proposed class is limited to residents of Texas.  (Pl. Compl. ¶ 25).  Flagship is a Delaware corporation with its principal place of business in Pennsylvania.  (Notice of Removal ¶ 3).  There is diversity of citizenship if there is the requisite jurisdictional amount.

B.    Class Size

David Bertoncini, Flagship's Senior Vice President of Risk and Business Development, testified about the loans and accounts potentially implicated by the proposed class from information compiled in Flagship's electronic records database.  (Tr. 4/12/10 at 6).  Mr. Bertoncini determined the number of Texas customers with loans in default, excluding customers who signed notification waivers or moved out of Texas, and concluded that the putative class consisted of 902 members.  (Tr. 4/12/10 at 8-10).  There is sufficient numerosity.

C.    Amount in Controversy[1]

David Bertoncini also testified on the amount in controversy based on the 902 class member accounts in Flagship's electronic records database.  The database enabled him to calculate the amount of finance charges paid by the relevant customers, as well as the principal amount of the loan obligations.  (Tr. 4/12/10 at 15-23).  Based on the statutory formula for

_____

[1] Plaintiff seeks minimum damages under Tex. Bus. & Com. Code § 9.625(c)(2).  Under this provision:

> (2) if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price.

Tex. Bus. & Com. Code § 9.625(c)(2).

minimum damages, Mr. Bertoncini testified that the amount in controversy would exceed $5 million.[2]   The accrued service charges for all potential members of the putative class total $4,233,041.  (Notice of Removal, Ex. A, ¶ 6; Tr. 4/12/10 at 19, 22).  The amount of finance charges over the life of the loan total approximately $13 million.  (Tr. 4/12/10 at 16, 23).  The total amount of the loans is $20,248,091.  (Notice of Removal, Ex. A, ¶ 7; Tr. 4/12/10 at 18, 23). The amount in controversy requirement is established.

There is subject-matter jurisdiction under CAFA so removal is proper under 28 U.S.C. § § 1332(d)(2)(A), (d)(5)(B).

## 2.     Transfer Under 28 U.S.C. § 1404(a)

The court *sua sponte* questioned whether transfer of the action to Texas is appropriate under 28 U.S.C. § 1404(a).  Transfer is appropriate "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where [the civil action] might have been brought."  28 U.S.C. § 1404(a).  Both parties concede the action could have been brought in the Eastern District of Texas.  (Tr. 4/12/10 at 3-4).  A court must make a case specific determination when addressing transfer.  *White v. ABCO Engineering Corp.*, 199 F.3d 140, 143 (3d Cir. 1999).  There are several factors a court may consider when making this determination.  15 Charles Alan Wright et al., Federal Procedure and Practice § 3848-54 (3d ed).

Hartt argued that transfer to Texas is not necessary because the majority of the factors under 28 U.S.C. § 1404(a) weigh in favor of keeping the case in Pennsylvania: (1) Flagship's

---

[2] The parties disagreed whether the "credit service charge" was the amount paid on the loan prior to default, or the finance charge over the life of the loan.  Under either calculation, the total, when combined with 10% of the loan principal would exceed $5 million.  (Tr. 4/12/10 at 20-23).

principal place of business is in Pennsylvania; (2) all corporate witnesses and documents are in Pennsylvania; (3) the operative events took place in Pennsylvania; and (4) it is plaintiff's choice of forum. Flagship did not move to transfer the action, nor did it oppose transfer, but raised the possibility of the action involving "a number of issues of first impression under Texas law." (Tr. 4/12/10 at 31). The court ordered the parties to brief those issues to allow an informed decision regarding transfer.

Flagship identifies four issues of first impression under Texas Law:

- Whether the absolute bar rule precludes a defendant from asserting amounts the putative class members owe to offset the recovery sought by plaintiffs;
- The burden of proof on primary use of the vehicles;
- Whether substantial compliance with notice obligations is sufficient; and
- Whether the statutory damages are uniformly applied regardless of actual damages.

These matters do not involve issues of first impression but require application of established legal precedent.

A.      Absolute Bar Rule

A secured creditor failing to comply with certain requirements of UCC, Article 9, including notice provisions, cannot sue for the deficiency owed after the sale of the collateral. *Tanenbaum v. Economics Lab., Inc.*, 628 S. W.2d 769, 772 (Tex. 1982) (creditor precluded from recovering a deficiency following default on a secured note and repossession of the collateral; "for a creditor in a secured transaction to sue for a deficiency after disposition of collateral in a commercially reasonable manner, he must first comply with those provisions of Section 9.504 which require giving notice to the debtor."). Flagship argues that the applicability of the absolute

bar rule is unsettled under *First City Bank – Farmers Branch v. Guex*, 677 S. W.2d 25, 29 (Tex. 1984). *Guex* is distinguishable on its facts and not in direct conflict with *Tanenbaum*.

     B.    <u>Burden of Proof on Primary Use</u>

The minimum statutory amount sought by plaintiff on behalf of the putative class only applies "if the collateral is consumer goods." Tex. Bus. & Com. Code § 9.625(c)(2). Flagship acknowledges that the Texas Supreme Court has not addressed who has the burden of proving the vehicle was used primarily for consumer use. Flagship and Hartt both cite Texas appellate opinions that the burden is on the party seeking to recover minimum statutory damages. *See Bundrick v. First National Bank of Jacksonville*, 570 S. W.2d 12, 19 (Tex.Civ.App. – Tyler 1978); *Hensley v. Lubbock National Bank*, 561 S. W.2d 885, 892 (Tex.Civ.App. – Amarillo 1978). Because there is no contrary Texas Supreme Court law or conflicting appellate law and, because plaintiff accepts this burden, this is not an issue suggesting transfer.

     C.    <u>Substantial Compliance</u>

Flagship cites two cases where the Texas courts did not require strict compliance with notice under Tex. Bus. & Com. Code § 9.614. Hartt acknowledges a lack of controlling law, but argues that the Code is clear on the sufficiency of notice in consumer transactions. The official comment to Section 9 states, "[a] notification that lacks any of the information set forth in paragraph (1) is insufficient as a matter of law." Though not enacted by the Texas legislature the UCC official comments have been adopted by the Texas Supreme Court. *See Exxon Mobil Corp. v. Gill*, 229 S. W.3d 124, 126 (Tex. 2010) (comments are valuable aids in interpreting the statutory language). This issue is not sufficiently novel that transfer is desirable.

D.      <u>Statutory vs. Actual Damages</u>

Hartt concedes that the class will only seek recovery of the statutory minimum.  Class members with actual damages exceeding the minimum statutory uniform damages will be afforded an opportunity to opt out of the class to pursue their own claims.  This is not an issue of first impression under Texas Law.

## CONCLUSION

This action is properly before the court, and there is no compelling reason for transfer.

An appropriate order follows.