IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLYNN HARTT, individually and on behalf of all others similarly situated,<br><br>     Plaintiff<br><br>  vs.<br><br>FLAGSHIP CREDIT CORPORATION,<br><br>     Defendant. | CIVIL ACTION NO. 10-CV-00822(NS) |

**PLAINTIFF'S MOTION FOR CERTIFICATION OF
SETTLEMENT CLASS AND FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT (UNCONTESTED)**

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT THEREOF**

**Dated:  11/19/10**

**LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ**
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**RICHARD TOMLINSON**
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100

**Attorneys for Plaintiff and the Class**

**TABLE OF CONTENTS**

I.    NATURE OF THE CASE ................................................................... 2

II.   HISTORY OF THE LITIGATION AND THE LEAD-UP TO MEDIATION ........... 7

III.  THE TERMS OF THE SETTLEMENT ................................................ 8

IV.   PRELIMINARY APPROVAL SHOULD BE GRANTED ........................................ 9

    A.   Procedure for Judicial Approval of Settlements ................................................. 9

    B.   Preliminary Approval Should be Granted ........................................ 11

        1.   The Settlement Was Reached After Arms-Length Negotiations ........ 11

        2.   The Settlement is Fair and Contains no Obvious Deficiency .............. 13

        3.   The Settlement is Within the Range of Reasonableness ..................... 14

        4.   Class Counsel Recommends the Settlement ........................................ 15

    C.   The Proposed Settlement Class Meets the Requirements for Certification .. 15

        1.   Rule 23(a)(1) -- Numerosity .............................................................. 16

        2.   Rule 23(a)(2) -- Commonality ........................................................... 16

        3.   Rule 23(a)(3) -- Typicality ................................................................ 17

        4.   Rule 23(a)(4) -- Adequacy of Representation ...................................... 19

        5.   Rule 23(b)(3) -- Common Questions of Law or Fact Predominate .... 21

        6.   Rule 23(b)(3) -- Class Action is Superior to Other Available Methods to Resolve This Controversy .............................................................. 22

        7.   Rule 23(g) Factors ............................................................................. 23

    D.   Class Notice ......................................................................................... 24

V.    CONCLUSION ............................................................................... 25

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

Plaintiff

vs.

FLAGSHIP CREDIT CORPORATION,

Defendant.

CIVIL ACTION NO. 10-CV-00822(NS)

## PLAINTIFF'S MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT (UNCONTESTED)

Plaintiff Glynn Hartt hereby moves the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for certification of a settlement class and for preliminary approval of a Class Settlement.

The class parameters are as follows:

"All persons who at the time the Statutory Notice was sent had addresses in the State of Texas and purchased their vehicles at a dealership in Texas; who originally or through assignment financed a motor vehicle with Flagship, and pledged the vehicle as collateral for the contract; from whom Flagship, as secured party, repossessed the vehicle or caused it to be repossessed; who were sent a post-repossession notice that 1) did not advise the debtor that he/she is entitled to an accounting; or 2) did not provide a description of any liability for deficiency; or 3) did not state a telephone number from which the amount needed to cure or redeem could be obtained, if the customer so chose;  or 4) stated that it is Flagship's intention to sell this vehicle at a private sale or auction within 10 days from the date of this letter; or 5) any combination thereof; or 6) were not sent any post-repossession notice, in the period commencing December 10, 2005, through October 7, 2010. "

Plaintiff submits that all of the requirements of Rule 23(a), Rule 23(b)(3), and Rule 23(g) are met.  In support of this Motion, Plaintiff incorporates the within Memorandum of Law with exhibits and Certifications of counsel.  Plaintiff further submits that this settlement is fair and

reasonable, reached after protracted arms-length negotiation, and in the best interest of the class. Defendant Flagship Credit Corporation does not oppose, but rather joins in the relief sought in this motion.

WHEREFORE, and for the reasons set forth more fully in the within Memorandum of Law, a settlement class should be certified under Rule 23.  Preliminary approval should be granted, and notice permitted to issue to the Class.

Date:  11/19/10

/s/ Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

RICHARD TOMLINSON
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLYNN HARTT, individually and on behalf of all others similarly situated, <br><br> Plaintiff <br><br> vs. <br><br> FLAGSHIP CREDIT CORPORATION, <br><br> Defendant. | CIVIL ACTION NO. 10-CV-00822(NS) |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CERTIFICATION OF SETTLEMENT CLASS AND FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT (UNCONTESTED)

Representative Plaintiff Glynn Hartt moves the Court to certify the matter as a class action for settlement purposes, to preliminarily approve a proposed class action settlement and permit Notice to be given to the class. The relief sought in this Motion is uncontested by Defendant Flagship Credit Corporation ('Flagship'), who joins in the request for certification of a settlement class and for preliminary approval.

A proposed Order for Certification and Preliminary Approval is submitted herewith for the Court's consideration. The proposed Order establishes certain dates for the mailing of Notice to the class and the procedure and timing for filing objections, if any, or requests for exclusions by members of the class.

The Settlement Agreement reflects, in the opinion of class counsel, an excellent result combining a cash payment of $2,500,000.00, complete relief from deficiency claims – valued at $11,285,000.00 – the correction of consumer credit reports, and other valuable benefits to the class. If approved as proposed, each Class Member stands to receive a net cash payment of about $1,650, debt forgiveness averaging over $12,000 each, plus valuable credit correction and

other relief.  The proposed settlement, with an aggregate value of well over $13.7 million on behalf of a class of 913 Texas borrowers, is worthy of approval.  (*See* Sett. Agreement, Exhibit "A" hereto).

## I.      NATURE OF THE CASE

***The UCC's Notice Requirement***

This is a consumer class action arising under the Texas Uniform Commercial Code ("UCC")[1] provisions that govern repossession of motor vehicles.  The action was brought against Flagship Credit Corporation, a Pennsylvania-based automobile finance company, by Glynn Hartt of Nacogdoches, Texas on behalf of himself and a class of Texas consumers similarly situated. Hartt sued Flagship for violations of the UCC's mandate that "reasonable authenticated notice of disposition of collateral" is to be mailed to a consumer after his vehicle is repossessed.  Tex. Bus. & Com. Code § 9.611.

When Flagship believes that a consumer has defaulted on a loan, it repossesses and resells the consumer's vehicle.  Although a secured party is generally entitled to repossess and dispose of collateral upon default, it must provide the debtor whose vehicle had been repossessed with the reasonable notice of disposition required under the UCC.   Specifically, after repossession, but before "private sale" or auction, the secured party must give a notice that provides important information concerning the impending forced sale of the consumer's vehicle, and the sums necessary to get the car back.  The notice requirements, found in Sections 9.611, 613 and 614 of Texas' UCC require the secured creditor to, *inter alia*:  describe the debtor and the secured party; describe the collateral; state the method of intended disposition (i.e., private sale, auction); state that the debtor is entitled to an accounting of the unpaid indebtedness and

---

[1]      The Texas legislature refers to that state's UCC as the Texas Business and Commerce Code.   For consistency, Plaintiff may continue to refer to the Act as the UCC or Code, while proper citation is to Tex. Bus. & Com. Code.

describe any liability for a deficiency the borrower may have after sale.  Tex. Bus. & Com. Code § 9.613-614.

The purpose of the required notice "is to allow the debtor an opportunity to protect his interests in the collateral." *Knights of Columbus Cred. Union v.* Stock, 814 S.W.2d 427, 430 (Tex. App. 1991).[2]  The "notice requirement is easy to understand and apply; it is inspired by the forlorn hope that the debtor if he is notified, will either acquire enough money to redeem the collateral or send his friend to bid for it." *Industrial Valley Bank v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254, 1263 (1985) (*quoting* J.J. WHITE AND R.S. SUMMERS, UNIFORM COMMERCIAL CODE, Section 26-9 (Second Ed. 1980)).

Unlike a mortgage foreclosure which may require court proceedings, self-help repossession involves the seizure of personal property without judicial oversight.  Therefore, a bank's repossession practices are regulated.  In Texas, the primary statute is Article 9 of the UCC, which is enforced by consumers through the Code's damages provisions.  The law requires secured creditors (like Flagship) to adhere strictly to the UCC notice rules.  *See Chisholm v. Tran South Fin. Corp.*, 194 F.R.D. 538, 551 (E.D. Va. 2000) (drafters of Code "intended to police lenders under Article 9").  Failure to provide proper notice of disposition of repossessed consumer goods as required by Article 9 of the UCC is a violation of that law that yields the uniform statutory minimum damages for which Plaintiff here filed suit.

### *Notice of Repossession to Hartt and the Class*

As the Court has some familiarity with the case from the earlier hearing and submissions regarding jurisdiction and transfer, Plaintiff will only highlight the salient facts.

---

[2]  Reasonable notice of disposition as contemplated by Section 9-611 was, prior to the year 2000 revisions to the Uniform Commercial Code, enumerated at Section 9-504.  Accordingly, *Knights of Columbus, Nash* and many other cases referring to notice of disposition of collateral cite to the pre-revision designations, but the re-numbering is not substantive.

In October 2007, Hartt obtained an automobile loan from Flagship to finance the purchase of a Hyundai automobile.  Unfortunately, shortly after entering into the car loan, Hartt fell behind in his payments after his wife became seriously ill and was unable to work.  As a result, Hartt called Flagship in early March 2008 and made the vehicle available for repossession.  On or about March 10, 2008, after repossession, Flagship sent Hartt a "Notice of Intent to Sell Property" (the "Notice").  A copy of that Notice is attached hereto as Exhibit "B".

Hartt alleges that the Notice that Flagship sent to him was deficient.  Plaintiff asserts that Flagship's notice (Exhibit "B"):

(1)     Gives an unreasonably short notice period before sale.  Flagship's contract provides that "we will send you notice at least 10 days before we sell it." (Contract or RISC, Exhibit "C" hereto; Notice, Exhibit "B").  However,  the Notice says Hartt's car would be sold "at a private sale or auction <u>within</u> 10 days from the date of this letter." (Emphasis added).

(2)     Fails to state that the "debtor is entitled to an accounting of the unpaid indebtedness, and ... the charge, if any, for an accounting."  Tex. Bus. & Com. Code §9.613(1)(D) (actionable under 9.614(1)(A)).

(3)     Fails to provide the required "description of any liability for a deficiency." Tex. Bus. & Com. Code § 9.614(1)(B).  This means that Mr. Hartt (and the class) was not told that he would be held responsible for any shortfall after Flagship applied the proceeds from the auction of his car.

Hartt asserts that these shortcomings in Flagship's Notice violate the statute.  *See id.*; *See also* 66 Tex. Jur. 3d (Secured Transactions) § 334.  If the notification in a consumer goods transaction lacks any of the required information, it is insufficient as a matter of law.  *Id.* (*citing*

Official 1999 UCC Comment 2 to § 9.614, Tex. Bus. & Com. Code); *Knights of Columbus*, 814 S.W.2d at 430-31.[3]

Flagship sent similarly deficient Notices to the approximately 912 other Texas borrowers who comprise this settlement class.  The vast majority were sent a notice identical to that sent to Hartt, i.e. a form notice with the three UCC deficiencies noted above: (1) less than 10 days notice, (2) no notice of entitlement to an accounting and (3) no explanation of the responsibility for a deficiency. (*See* Exhibit 'B')  Others were sent a form notice lacking in one or two of those respects.  Plaintiff attaches hereto samplars of notices which, while not precisely identical to that sent to Hartt, manifest one or more of the same violations.  (*See e.g.* Exhibit 'D', less than 10 days, no notice of accounting; Exhibit 'E' no adequate explanation of deficiency responsibility).

Class counsel reviewed the files of approximately 1230 Texas borrowers, spanning over 70,000 pages of documents produced in discovery by Flagship.  Discovery revealed that the errors in the notices of disposition sent to the class were the result of Flagship's repossession personnel creating and perpetuating use of their own form notices which did not contain important statutorily-required information.  (*See* Dep. tr. of Flagship's vice president Dan Dissen at pp. 12-18, Ex. 'F' hereto).

***Statutory Damages Under the UCC***

The UCC provides minimum uniform damages formula for the secured party's failure to follow Article 9's requirements of notice.  Tex. Bus. & Com. Code § 9.625(c)(2) provides:

> '(2) if the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this subchapter may recover for that failure in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation or the time price differential plus 10 percent of the cash price.'

---

[3]    It bears note that although Flagship concurs in the instant relief sought, it does not concur with Plaintiff's assessment of the legal violations.

The Official Comment to this section of the UCC in Texas, as elsewhere, explains that the statutory damages are both uniform and intended by the Act regardless of actual damages. The UCC Comment to § 9.625(c)(2) provides in pertinent part:

> "4.   **Minimum Damages in Consumer-Goods Transactions**. Subsection (c)(2) provides a minimum, statutory, damage recovery for a debtor and secondary obligor in a consumer-goods transaction. It is patterned on former Section 9-507(1) and is designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, <u>regardless of any injury</u> that may have resulted." (emphasis added).

As this Court has already observed, the UCC official comments have been adopted by the Texas Supreme Court "as valuable aids." *Hartt v. Flagship Credit Corp.*, 2010 WL 2736959 at *3 (July 8, 2010) (*citing Exxon Mobil Corp. v. Gill*, 229 S.W.3d 124, 126 (Tex. 2010)).

As an illustration of this uniform formula, Mr. Hartt's statutory damages under 9.625(c)(2) work this way:

|  | Finance Charge | PLUS 10 % of Amount Financed (Principal) | = STATUTORY DAMAGES |
|---|---|---|---|
| **Glynn Hartt's Hyundai** | $14,644.55 | $2824.30 | **$17,468.85** |

These figures are readily determinable from the Truth in Lending "Schumer Box" on Hartt's (and the Class') form retail installment sales contracts (RISCs). (See Ex. "C", Hartt RISC).[4]

---

[4]     Flagship has suggested in earlier briefing that the 9.625(c)(2) formula refers to finance charges paid-in as of the date of repossession. But the authorities make clear that the formula refers to the entire "finance charge" as set forth in the RISC or loan agreement, and 10% of the original debt principal. *Garza v. Brazos County Federal Credit Union*, 603 S.W.2d 298, 300-01 (Tex. App. 1980); *Industrial Valley Bank v. Nash*, 349 Pa. Super. 27, 502 A.2d 1254, 1257 (1985).

## II.   HISTORY OF THE LITIGATION AND THE LEAD-UP TO MEDIATION

In December, 2009, Hartt commenced this matter by filing a Class Action Complaint against Flagship in the Philadelphia Court of Common Pleas.   On March 1, 2010, Flagship timely removed the case to the United States District Court for the Eastern District of Pennsylvania.   (*See* Doc. No. 1, Notice of Removal).   Flagship cited as basis for its removal the Class Action Fairness Act of 2005 ('CAFA') claiming the amount in controversy exceeded $5,000,000.00, and there existed sufficient diversity of citizenship between the members of the Texas class and the Pennsylvania Defendant.   *See* 28 U.S.C. § 1332(d), 1441, and 1453.

After removal, Hartt filed an Amended Complaint in Federal Court.   (Doc. No. 4).   On March 24, 2010, Flagship filed its Answer with a Counterclaim against Mr. Hartt for an alleged deficiency balance owed.   (Doc. No. 8).   By Order dated March 17, 2010, the Court scheduled an evidentiary hearing on a Rule to Show Cause how the CAFA threshold has been met, *i.e.*, establish subject matter jurisdiction.   In the same Order, the Court *sua sponte* questioned whether a transfer to a Texas Federal District Court would be appropriate.

The Court held an evidentiary hearing on April 12, 2010.   At the conclusion of the hearing, the Court asked both sides to brief potential issues of first impression, and they did so. The Court thereafter found subject matter jurisdiction was established and that there was no compelling reason to transfer.   *See Hartt v. Flagship Credit Corp.*, 2010 WL 2736959 at *3.

Thereafter, the parties engaged in copious discovery.   Written discovery was exchanged. Flagship produced some 1230 loan files containing over 70,000 pages of documents which Plaintiff reviewed and catalogued.   Plaintiff deposed two officers of Flagship.   Flagship deposed Mr. Hartt and his daughter Jessica here in Philadelphia.   A review of the loan files enabled class counsel to understand the class size, the number and variety of RISCs in use, how many notices

were non-conforming, scope of damages, claimed deficiency balances, possible exclusions (bankruptcies, etc.) and the like.

The parties later agreed to submit their controversy to Mediation in the effort to reach settlement, if possible.  The class certification briefing was stayed once and a mediation was arranged for October 7, 2010 in front of retired U.S. Magistrate Judge Diane Welsh at JAMS.  The parties exchanged mediation memoranda a week in advance.

On October 7, 2010, the parties met for a nearly 12-hour mediation session before Judge Welsh.  There were many points of contention at the mediation.  These involved class size and which notices may violate and issues of Texas law.  There was disagreement over the entitlement to deficiency balances against Hartt and the class for amounts Flagship said was owed after auction sale of the repossessed cars.  Flagship contended that these deficiencies acted as a set-off to any class recovery.  Plaintiff disagreed and asserted that Texas law provides for an absolute bar.

Independent from the merits of the liability and damages arguments, there were collectability concerns (discussed *infra*).  Also, on the eve of mediation, Plaintiff was alerted to a coverage dispute between Flagship and its insurance carrier that threatened coverage for Plaintiff's claims.  By the end of the day, the mediation was successful and the parties had reached an agreement in principle.  After many drafts and edits, the parties have inked a formal Settlement Agreement  that they now present for preliminary approval.

### III.    THE TERMS OF THE SETTLEMENT

The settlement, if approved, will provide over $13.7 million in aggregate relief to the class plus valuable equitable relief in the form of credit report correction.  The significant terms of the class-wide settlement are as follows:

1.      Flagship will pay $2,500,000.00 into a settlement fund within ten (10) days following the entry of an Order of Preliminary Approval.  Those funds will be used to pay class members, class counsel fees and costs, and administration expenses.  (*See* Sett. Agreement, Exhibit "A" at ¶ 2.05).

2.      Flagship will release all class members with a post-repossession sale deficiency balance claimed due by Flagship.  These aggregate deficiency balances to be released via the settlement approximate $11,285,934.66.  (Sett. Agreement at ¶ 5.02; *see also* Sett. Agreement at p. 3 (valuing deficiencies)).

3.      Flagship will satisfy any outstanding monetary judgments it presently holds against class members related to claimed deficiency balances due.  Pursuant to the settlement, Flagship will use its reasonable best efforts to see to it that any judgments previously entered against class members have been satisfied or released (Sett. Agreement at ¶ 2.09).

4.      Flagship will advise all consumer reporting agencies to whom it reports to either entirely any tradeline from the class members' credit reports or to report the account balances of class members as settled with a zero balance owing on their credit reports (Sett. Agreement at ¶ 2.08a).

5.      Flagship will cease all collection activity on any deficiency balance allegedly owed by class members (Sett. Agreement at ¶ 2.08b).

6.      Flagship will, subject to Court approval, and separate and apart from this settlement fund, pay an individual settlement/incentive award to the class representative Mr. Hartt in the amount of $5,000.00 in recognition of his exceptional investment of time on behalf of this class of Texas borrowers (Sett. Agreement at ¶ 2.11).

As set forth more fully below, class counsel believes the terms of the settlement to be very favorable to the class.  In some ways, this settlement represents a better result that could have been achieved through completely successful litigation when considering the magnitude of the debt forgiveness, and the equitable type relief in the form of credit report correction.

## IV.      PRELIMINARY APPROVAL SHOULD BE GRANTED

### A.  Procedure for Judicial Approval of Settlements

There is a presumption in favor of voluntary settlement agreements.  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010).  "This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by

avoiding formal litigation. '" *Id.* (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)); *See also In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (Third Circuit policy to encourage settlement of litigation 'that otherwise could linger for years'); *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2000) ('The law favors settlement, particularly in class actions and other complex cases, to conserve judicial resources and reduce parties' costs.').

The procedure for approval of a proposed class action settlement is well established. It involves a two step process: (1) a 'preliminary approval' order; and (2) a 'final approval' order after notice of the settlement is provided to the class and a hearing to consider the fairness of the proposed settlement has been held. *See* MANUAL FOR COMPLEX LITIGATION, Fourth (2004) ('MCL') §§ 21.632; *Gates v. Rohm and Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008); *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

In considering preliminary approval, courts make an initial evaluation of the fairness of the settlement, prior to notice. Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is warranted. *MCL* 4th § 21.632. When determining preliminary approval, the issue before a court is whether the proposed settlement appears fair, reasonable and adequate. *Id.*; Fed. R. Civ. Pro. 23(e); *Gates*, 248 F.R.D. at 438. In undertaking its analysis, courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement. *See McNamara*, 214 F.R.D. at 430-31 ('Counsel on all sides have proved to the Court their knowledge of the facts and law relevant to this case. Settlement was reached by knowledgeable counsel, and it was arrived at after much

negotiation as is evidenced by the time it took the parties to reach an agreement.'); *In re Automotive Refinishing Paint Antitrust Litig.*, 2003 WL 23316645 at *2 (E.D. Pa. Sept. 15, 2003) ('[I]t is appropriate to give deference [at preliminary approval] to the recommendations of experienced attorneys, who have engaged in arms-length settlement negotiations, in making this determination.').

Here, counsel submit that the Settlement is fair, reasonable and adequate.

**B.     Preliminary Approval Should be Granted**

**1.   The Settlement Was Reached After Arms-Length Negotiations**

The Settlement here followed production of tens of thousands of pages of documents that class counsel reviewed and catalogued.  After the early procedural motion practice, including briefing on substantive issues of Texas law, Plaintiff turned to analysis and management of tens of thousands of those documents, and class membership.  Flagship maintained that many of its Texas borrowers were exempted from the class for one of several reasons.  These included arbitration agreements in their files, bankruptcy, (claimed) waiver, purchases for non-consumer use (and thus removed from the ambit of the UCC's remedy), non-receipt of the notice, or a non-Texas address for the notice.  For his part, Hartt argued that most of these individuals should remain in the class and mounted a thorough investigation into Flagship's reasons for excluding consumers.  The parties now agree that 913 borrowers comprise the class.

An important issue in this litigation and in settlement negotiations was the issue of claimed deficiency balances.  Flagship insisted (and still maintains) it could use these as a set-off to any class recovery of statutory damages.  Flagship maintained that most class members, like Mr. Hartt, had an outstanding deficiency reflecting the spread between what his car brought at auction and the money owed to Flagship.  Plaintiff has asserted from the start that Texas was an

"absolute bar" state – i.e., a jurisdiction where secured creditor who fails to comply with certain requirements of UCC, Article 9, including its notice provisions, cannot sue for any deficiency after the sale of the collateral.   When presented with this question, the Court held (at least preliminarily) that Texas was an absolute bar state.   *Hartt*, 2010 WL 2736959 at *3.   Flagship, it is safe to say, continues to believe set off would be appropriate, and that this was a mere interlocutory ruling subject to revision upon further briefing.

Immediately prior to mediation, class counsel was alerted to a coverage dispute between Flagship and its insurance carrier.   That dispute resulted in the filing by Flagship in Texas of a complaint for declaratory judgment.   *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, U.S.D.C. S.D. Tx. No. 4:10-CV-3616.   Naturally, insurance coverage (or lack thereof) for Plaintiff's claim was a concern.

Flagship's witnesses had also testified that the firm has had major layoffs, that it sold off or returned most of its portfolio of loans and its future was uncertain.   (*See* Depo. of Dan Dissen, Sept. 20, 2010, pp. 25-27, Exhibit "F" hereto).   It was with the backdrop of circumstances described above that the parties proceeded to mediation and ultimately reached a Settlement Agreement in principle after a marathon session with Judge Welsh.

During mediation and after, the details of the Settlement Agreement were bargained-for at arm's length over the course of a month.   The parties eventually worked out differences in agreement over whether any undistributed settlement funds would revert to Flagship (no), the amount of attorneys' fees to be petitioned-for out of the settlement fund, the content of the proposed class notice and proposed orders for approval, and the identity of the *cy pres* beneficiaries among other discrete issues.   The litigation, mediation, and post-mediation

discussions resulted in an Agreement which was the product of serious, informed, non-collusive negotiations among counsel.

### 2.   The Settlement is Fair and Contains no Obvious Deficiency

If this settlement is approved (and requested legal fees and costs allowed) each class member can expect to receive a benefit of over $14,000.  This comprises an average $12,360 in debt forgiveness and $1650 or more in cash, plus the valuable equitable benefit of credit report correction, and satisfaction of any outstanding judgments.  The Settlement's monetary value of $2.5 in cash for a smaller class is not insubstantial.  Each class member will have his deficiency balance with Flagship completely erased, a benefit to the class worth over $11,285,000 in the aggregate.  As relates to the alleged deficiencies, there will be  no further collection activity and no negative credit reporting of the balances Flagship sought to collect from the class members. This sort of relief is very valuable  – if admittedly difficult to quantify.  *See Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932 at *4 (E.D. Pa. Dec. 22, 2004) (equitable relief in the form of credit repair has value yet 'defies monetary value with any precision').

In some ways, settlement is *more favorable* than could have been achieved through a successful trial.  While the class could conceivably recover more in cash damages, it is an open question whether a court *could* award the equitable-type relief including the ending of collections, the credit repair, and the debt forgiveness.

The representative award and attorney fee request are fair and reasonable considering the quantum of relief obtained and the effort expended to obtain it.  The individual award to Mr. Hartt is separate and will in no way detract from the $2.5 million settlement fund, nor is the award of $5,000 in any way excessive as it comports with similar awards in representative actions enforcing consumer rights in this District.  *See e.g. Barel v. Bank of Am.*, 255 F.R.D. 393

(E.D. Pa. 2009) ($10,000 incentive to class representative in FCRA class action).[5]  Hartt served admirably as class representative, while missing work and using vacation time in sitting for his deposition and participating in the mediation in Philadelphia (and will again do so for any scheduled upcoming Final Approval hearing).   Plaintiff will request attorney fees from the common fund of cash in the amount of $925,000.00 plus litigation expense reimbursement not to exceed $20,000.00.  This represents less than 7% of the minimum estimated value of total relief to the class (of at least $14 million) and about 37% of the cash.[6]

### 3.   The Settlement is Within the Range of Reasonableness

The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful, discounted by the risks of not prevailing.  *Boone v. City of Philadelphia,* 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *In re General Motors*, 55 F.3d at 806).

Flagship's witness David Bertoncini testified at the CAFA hearing that if statutory damages were applied across the board (for 902) class members the amount would sum to over $13,000,000.  (Hearing tr. April 12, 2010, p. 23, Exhibit 'G' hereto).  Allowing that the final class membership comes to 913, this represents the plaintiff class' best possible scenario. Importantly, this number reflects cash relief only – if Plaintiff were to prevail at every phase.

Considering the risks associated with a lengthier litigation and trial, a pending insurance coverage dispute, and Flagship questionable viability, the instant settlement, which provides $2.5 in <u>cash</u>, $11.285 million in debt forgiveness and significant equitable relief is a real win for the

---

[5]       Class counsel is aware that this Court is not a devotee of class representative incentive awards.  Yet, given the unusual circumstances here and the great distance involved, Plaintiff seeks an allowance in this instance.

[6]       Of course, Plaintiff will move for an award of class counsel fees at the time of seeking final approval. Plaintiff only discusses fees here briefly to give context and a basis for the notice's estimate of net cash to class members.  Plaintiff also points out that the claims pled do not carry statutory counsel fee provisions and class counsel fees will be sought purely by the common-fund approach.

Class.  The lion's share of this relief – the debt forgiveness – might not even have been part of any successful litigated award.  Similarly, the credit repair and collection relief would not likely be part of any trial award.  The value of the proposed settlement for the class of Texans from whom Flagship repossessed a vehicle is well within the range of reasonableness.

### 4.   Class Counsel Recommends the Settlement

Class Counsel have extensive experience in class action litigation in the areas of consumer protection law and the UCC, and are thoroughly familiar with the factual and legal issues of the case.  (*See* Certifications of Counsel, Exhibits 'H' through 'K').  The Settlement followed a thorough investigation by Class Counsel into the merits of the case, including a year of investigation, litigation and discovery.  Counsel have analyzed each of Defendant's arguments against the merits of Hartt's claim and whether the case could be certified on contest.  Defendant raised purported deficiency set-offs, potential waiver of UCC rights by some class members, Mr. Hartt's adequacy in light of his repossession being voluntary, the presence of arbitration clauses in some class members' files, the issue of out of state addresses, and other pointed arguments directed at the merits and the class.  Class Counsel also considered the ramifications of insurance coverage (and the carrier's denial thereof) and the collectability concerns.

For all these reasons, the Settlement Agreement is fair, adequate and in the best interest of the class, and it should be approved.

### C.    The Proposed Settlement Class Meets the Requirements for Certification

In order for a class to be certified for settlement purposes, all four requirements of Rule 23(a) must be satisfied along with one of the three categories of Rule 23(b).  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997); *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 413 (E.D. Pa. 2010).  Rule 23(b)(3) permits the maintenance of a class action if 'the Court finds

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy ".  This is a paradigmatic class action which involves uniform form notices and statutory damages.  It should be certified now to permit notice of the proposed settlement.

### 1.    Rule 23(a)(1) -- Numerosity

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires the class to be "so numerous that joinder of all members is impractical." *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984).  Our Court of Appeals has held that generally a class of more than 40 individuals will satisfy the numerosity requirement.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, the parties agree that the class consists of 913 Texas consumers who received notice that violated the UCC.  (Sett. Agreement at 2.06).   The class is clearly sufficiently numerous for certification.

### 2.    Rule 23(a)(2) -- Commonality

There are questions of law and fact common to this class.  The primary questions presented include:

(a)    Whether Flagship financed and repossessed a vehicle belonging to a class member;

(b)    Whether Flagship sent or failed to send the notice required under the UCC after repossessing a vehicle;

(c)    Whether Flagship's Notice of Disposition was "commercially reasonable" as required by the UCC;

(d)     The uniform formula for statutory damages provided for Flagship's violation of

the UCC.

The threshold commonality inquiry is whether there are any questions of fact or law that are common to the class.  Fed. R. Civ. Pro. 23(a)(2).  "[C]ommonality does not require an identity of claims or facts among class members".  *In re Ins. Brokerage Antitr. Litig.*, 579 F.3d 241, 265 (3d Cir. 2009); *Newton v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001).  "Rather, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class". *Ins. Brokerage*, 579 F.3d at 265; *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).  Thus, "the threshold of commonality is not high".  *Newton*, 259 F. 3d at 183.

These questions are plainly common to each of the 913 class members identified by Flagship.  Plaintiff respectfully submits that the Class readily meets the threshold of commonality.

### 3.     Rule 23(a)(3) -- Typicality

Courts have also "set a low threshold for satisfying" the typicality requirement.  *Newton*, 259 F.3d at 183; *see also Seidman v. American Mobile Sys.*, 157 F.R.D. 354, 360 (E.D. Pa. 1994).  Indeed, "if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established ... ".  *Newton*, 259 F.3d at 183-84.  *See also Baby Neal*, 43 F.3d at 58 ("cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement").

The typicality requirement "does not mandate that all putative class members share identical claims".  *Newton*, 259 F.3d at 184; *see also Hassine v. Jeffes*, 846 F.2d 169, 176-77 (3d Cir. 1998).  Plainly, "there is nothing in Rule 23(a)(3) which requires named plaintiffs to be

clones of each other or clones of other class members". *In re Lorazepam and Clorazepate*, 202 F.R.D. 12, 27 (D.D.C. 2001).

In this case, Hartt had "alleged that [he] suffered harm as a result of this same class-wide conduct that injured the absentee class members". *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 148 F.3d 283, 312 (3d Cir. 1998). Although there were some minor variations in the form of (non-compliant) notice, Hartt's claims and the class members' claims are identically predicated on the same statutory notice requirement. As such, there is no difference as to the type of relief sought or theories of liability upon which Hartt proceeds.

The common unifying point between Hartt and the rest of the class is that all were sent a Repossession Notice from Flagship which was deficient by not providing one or more of the elements required under the Texas UCC. See Tex. Bus. & Com. Code § 9.611, 613-614. As stated above, some notices (like Hartt's) contained three errors: (1) less than 10 days notice, (2) no notice of entitlement to an accounting and (3) no explanation of the responsibility for a deficiency. (*See* Ex. 'B", Hartt notice). Others had two of these errors. (*See* Exhibit 'D", less than 10 days, no accounting language). Still others had one substantive problem. (*See* Exhibit 'E", inadequate deficiency responsibility language). Hartt argues that any differences in the style of the different forms of notice used by Flagship during the class period are not material, and in no way detract from the uniform flaws shared by the notices. Because of this common thread, any perceived differences between the two notices, or differences among those cases where no notice was received, are inconsequential. *Baby Neal*, 43 F.3d at 58; *Jordan*, 237 F.R.D. at 138-39.

Mr. Hartt is typical of the class of individuals he seeks to represent.

### 4.      **Rule 23(a)(4) -- Adequacy of Representation**

The rules also require that the named plaintiff provide fair and adequate protection for the interests of the class.  *In re Community Bank of Northern Va.*, --- F.3d. ----, 2010 WL 3666673, *13 (3d Cir. Sept. 22, 2010); *Allen v. Holliday Universal*, 249 F.R.D. 166, 180 (E.D. Pa. 2008). That protection involves two factors: (1) whether plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed litigation,[7] and (2) whether the plaintiff has interests antagonistic to those of the class.  *See Allen*, 249 F.R.D. at 180; *Hassine*, 846 F.2d at 179.  Both prongs are readily met here.

Hartt is represented by counsel experienced in consumer class action litigation.  Cary L. Flitter and Lundy, Flitter, Beldecos & Berger, P.C. have been approved as competent counsel by this Court and others in well over two dozen consumer class actions.  Flitter has presented at scores of lectures and CLE's regionally and nationally for over 15 years.  Flitter serves on the adjunct faculty of Temple University's Beasley School of Law and Widener University School of Law where he teaches consumer litigation and class action practice.  He is a co-author of *Pennsylvania Consumer Law*, Geo. Bisel Publishing Co.  A full statement of qualifications is included within the Certification of Cary L. Flitter attached at Exhibit 'H'".

Mr. Hartt and the class will also be represented by Theodore E. Lorenz of the Lundy, Flitter firm.  Mr. Lorenz has experience as a judicial clerk and as Deputy Attorney General for the Commonwealth of Pennsylvania.  Mr. Lorenz is an experienced litigator.  Mr. Lorenz was recently approved as class co-counsel in the repossession notice class action *McCall v. Drive*

---

[7]      "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) ... those questions have, since 2003, been governed by Rule 23(g)".  *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  That subsection lists several non-exclusive factors that a district court must consider in determining 'counsel's ability to fairly and adequately represent the interests of the class'", Fed. R. Civ. P. 23(g)(1)(B).  For the sake of completeness, Hartt analyzes the adequacy factors here, as well as in a separate section *infra* titled 'Rule 23(g) Factors'".

*Financial,* 2006 WL 6233425 (Pa. CCP Phila Co. Apr. 10, 2009) and has been named class co-counsel in several other class action matters within this District.  Mr. Lorenz's credentials are more fully set forth in his Certification filed herewith as Exhibit "I".

Andrew M. Milz, Esquire of the Lundy, Flitter will also be class counsel.  Mr. Milz is a 2008 graduate of the Temple University School of Law where he was Executive Editor of the *Temple Political & Civil Rights Law Review* and was awarded distinctions for his brief writing and Outstanding Oral Advocacy in Temple's Integrated Trial Advocacy Program.  Mr. Milz has been involved with dozens of consumer matters on an individual and class basis in his time at the Lundy, Flitter firm.  (*See* Milz Certification, Ex. "J" hereto).

The class and Mr. Hartt will also be represented by Richard Tomlinson of Houston, Texas.  Mr. Tomlinson has over three decades of consumer protection experience as both a staff and managing attorney in legal aid, as an assistant attorney general in the Consumer Protection Division of the Texas Attorney General's Office, and in private practice.  He is board-certified in Consumer and Commercial Law by the Texas Board of Legal Specialization.   Mr. Tomlinson has frequently lectured and been published on consumer law topics and is currently adjunct faculty at South Texas College of Law, where he teaches a course on "The Practice of Consumer Law."  In January 2010, Mr. Tomlinson returned to legal aid as Director of Litigation in the Houston Office of Lone Star Legal Aid.  (*See* Tomlinson Declaration, Exhibit "K")

Additionally, there is nothing to suggest that Plaintiff Hartt is inadequate or has any interest antagonistic to the class.  *See Allen*, 249 F.R.D. at 185.  Mr. Hartt has been engaged in this litigation at every step of the way: by meeting with Messrs. Tomlinson and Flitter in East Texas to discuss the facts, the nature of the case and his role as a possible class representative, by traveling to and sitting for his deposition here in Pennsylvania, by seeking regular updates and

communicating with counsel, by traveling to Philadelphia a second time to participate in the day-long mediation, by being engaged in the settlement process, and by being prepared to attend the final hearing.  Given Mr. Hartt's understanding of and engagement in the case and the absence of any unique defense, there is no potential for conflicting interests in this class action.  Plaintiff respectfully submits that the adequacy prong of Rule 23 is readily met, completing the analysis of the elements of Rule 23(a).

### 5.   Rule 23(b)(3) -- Common Questions of Law or Fact Predominate

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.  *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 625 (3rd Cir. 1996), *aff'd sub nom Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hydrogen Peroxide*, 552 F.3d at 310.  To achieve Rule 23(b)(3) certification, a plaintiff must establish that "common proof will predominate with respect to each of [the elements of his claim]."  *Behrend v. Comcast Corp.*, 264 F.R.D. 150, 156 (E.D. Pa. 2010).

In this case, the "common proof" is that all class members was sent a Notice of Repossession from Flagship which failed to advise them of important information required by the UCC.  The question of law is uniform under a single article of the UCC and (if not for settlement) could have been satisfied with the same proofs (i.e., the notice), in one trial.  Predominance is generally established in cases dealing with the legality of standardized documents and practices because the document is the focal point of the analysis.  *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 111-12 (E.D. Pa. 2002).  In this case, it is clear that both the issues of fact and the issues of law are straightforward and predominate.

**6.     Rule 23(b)(3) -- Class Action is Superior to Other Available Methods to Resolve This Controversy**

Plaintiff also satisfies the superiority requirement of Rule 23(b)(3).  Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented.  *In re Prudential*, 148 F.3d at 315.  A class action is superior to other available methods where a class resolution of the common issues among class members "outweighs the difficulties in management of separate and individual claims, and allows access to the courts for those who likely would not gain such access standing alone – particularly in light of the relatively modest amount of statutory damages".  *Serrano*, 711 F. Supp. 2d at 413.

In this case, there is no better method available for the adjudication of the claims which might be brought by each individual Texas consumer.  Indeed, members of the class are probably unaware that their rights have been violated and may be unable to locate or hire lawyers experienced in this area of the law.  Further, the cost of proceeding with an action on an individual basis would not be practical or economical given the relatively small size of potential individual statutory damage awards.[8]  Several courts, within this District, and across the country have certified compensable UCC "repossession notice" classes based on similar facts.[9]  Overall, members of the putative class will benefit greatly by proceeding on a class basis.

---

[8]     The availability of statutory counsel fees is occasionally looked at in determining whether individual litigation is feasible.  Hartt notes that there is no fee-shifting provision in the UCC under which he sues.

[9]     *See McCall v. Drive Financial Services*, 2006 WL 6233425 (Pa. CCP Phila Co. Apr. 10, 2009) (deficiencies in repo notice under Pennsylvania's UCC); *Cooley v. FNB Corp.*, 2008 WL 5724573 (Pa. CCP Lawrence Co. Nov. 13, 2008) (same); *see also Chisholm v. Trans South Fin. Corp.*, 194 F.R.D. 538, 557-69 (E.D. Va. 2000); *Walczak v. Onyx Acceptance Corp.*, 850 N.E. 2d 357, 366-72 (Ill. Appl. 2d Dist. 2006); *Middleton v. Sunstar Acc. Corp.*, 2000 WL 33385388 (S.C. Com. Pl. Jan. 13, 2000).

7.     **Rule 23(g) Factors**

Rule 23, as amended, requires that this Court "must consider" four additional factors in dealing with appointment of class counsel in the certification process.   *See* F. R. Civ. P. 23(g)(1)(C); *Sheinberg v. Sorensen*, 606 F.3d 130, 133-34 (3d Cir. 2010).

While some of the Rule 23(g) elements are covered by the earlier discussion of adequacy, in the Certification of Cary L. Flitter filed herewith, counsel attests to the following: (a) the work counsel has done in identifying or investigating the potential claims; (b) counsel's experience in handling class actions, other complex litigation and claims of these types asserted in the action; (c) counsel's knowledge of the applicable law; (d) the resources that counsel will commit to representing the class.

This Flitter Certification reflects that plaintiff's counsel has spent considerable effort in identifying and investigating potential claims and has concluded that the instant claim for statutory damages under Article 9 of the Texas UCC is the only viable claim to be lodged by the class in relation to Flagship's defective notice of disposition.  (*Id.* at ¶18).  This Certification also recites counsel's handling of many other consumer credit matters, and recognition by this Court and others of capable handling of assorted consumer class cases.  (*Id.* at ¶19).  This Certification speaks to plaintiff's counsel's "knowledge of the applicable law" by nearly 30 years of practice, university and law faculty appointments, authorship, and by lectures and CLE trainings presented in the region and throughout the country.  (*Id.* at ¶20-22).  Finally, the Flitter Certification speaks to the resources that counsel is prepared to commit and has committed to this case, as necessary. (*Id.* at ¶23).  This fulfills the mandate of Rule 23(g).

Accordingly, all of the Rule 23 requirements for certification of this settlement class have been satisfied.

D.      **Class Notice**

With the Settlement Agreement and this motion, Plaintiff submits a proposed form of notice to the class.  *See* F.R.Civ.P. 23(c)(2)(B), 23(e)(1).  A true and correct copy of the proposed Class Notice is appended hereto as Exhibit 'L'.  (Of course, the blanks for dates will be filled in before mailing).  In plain-English, the notice informs class members regarding (a) formation of the class; (b) the class definition; (c) claims, defenses and issues in the case; (d) terms of the proposed settlement; (e) the request for an award of attorney's fees and expenses to class counsel; (f) the agreed individual settlement payment to representative Plaintiff Hartt; (g) the class member's right to opt-out, and thereby not participate in the proposed settlement; (h) class member's right to appear and object to the proposed settlement; (i) the time, date and location of the final approval hearing; and (j) class member's right to appear at the final approval hearing in favor of or in opposition to the proposed settlement.

The proposed notice comports with the requirements of Rule 23(c) and 23(e) as amended, and with the Court of Appeals' decision in *Wachtel v. Guardian Life Ins. Co. of America*, 453 F.3d 179, 185 n.6 (3d Cir. 2006), recommending plain-English class notices.  The notice is clear and reader friendly, and provides class members with sufficient information to make an intelligent decision as to whether to remain in the class, opt-out, or object to any aspect of the proposed settlement.  Administration of notice, opt-outs, objections and settlement checks will be handled by RSM McGladrey, Inc., an experienced Claims Administrator based in Pennsylvania.  (Sett. Agrmt. ¶ 1.18).  The Administrator will use both the postal service and Accurint (a sophisticated consumer database) to find the last and best addresses for all class members.

Plaintiff proposes notice by first class mail, which comports with Fed. R. Civ. P. 23(c)(2) requiring the best notice practicable under the circumstances. *See Perry v. Fleet Boston Fin. Corp.*, 229 F.R.D. 105, 113 (E.D. Pa. 2005).

## V. <u>CONCLUSION</u>

The proposed settlement puts an end to this litigation, and provides considerable cash and equitable type relief that goes beyond what plaintiff could obtain through a jury trial in some ways. The instant settlement falls well within the range of a fair, reasonable and adequate award. Preliminary approval should be granted, and the class notice approved and directed in the form proffered. Defendant consents to preliminary approval. Further, the proposed settlement class meets the requirements of Rules 23(a) as well as Rule 23(b)(3). Plaintiff Glynn Hartt respectfully requests that the Court certify the settlement class under Rule 23(b)(3).

Date:  11/19/10

/s/ Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

RICHARD TOMLINSON
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

               Plaintiff

     vs.                                   CIVIL ACTION NO. 10-CV-00822(NS)

FLAGSHIP CREDIT CORPORATION,

               Defendant.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 19, 2010, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which sent notification of such filing to:

Marc J. Sonnenfeld, Esquire
John P. Lavelle, Jr., Esquire
Iddo Harel, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921

Said document is available for viewing and downloading from the ECF system

Date:  11/19/10                          */s/ Cary L. Flitter*
                                       CARY L. FLITTER