IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLYNN HARTT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff<br><br>          vs.<br><br>FLAGSHIP CREDIT CORPORATION,<br><br>                    Defendant. | CIVIL ACTION NO. 10-CV-00822(NS) |

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT THEREOF

Dated:  3/30/11

**LUNDY, FLITTER, BELDECOS & BERGER, P.C.**
**CARY L. FLITTER**
**THEODORE E. LORENZ**
**ANDREW M. MILZ**
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**RICHARD TOMLINSON**
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100

**Attorneys for Plaintiff and the Class**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     NATURE OF THE LITIGATION ..................................................................... 2

III.    NATURE OF SETTLEMENT ........................................................................... 7

IV.     LEGAL ARGUMENT ....................................................................................... 10

        A.     Factors Bearing on Final Approval ....................................................... 10

               1.     The Complexity, Expense and Likely Duration of the Litigation ...................... 11

               2.     The Reaction of the Class to the Settlement ........................................ 12

               3.     The Stage of the Proceedings and the Amount of Discovery Completed .......... 13

               4.     The Risks of Establishing Liability ............................................... 14

               5.     The Risks of Establishing Damages ............................................... 15

               6.     The Risks of Maintaining the Class Action Through Trial ........................ 16

               7.     The Ability of the Defendant to Withstand a Greater Judgment .................. 17

               8.     *Girsh* Factors (8) The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery & (9) The Range of Reasonableness of the Settlement to a Possible Recovery in Light of all the Attendant Risks of Litigation .................. 17

               9.     Additional Factors ............................................................... 20

        B.     Expense Reimbursement to Mr. Hartt ................................................. 21

        C.     Cy Pres ........................................................................................... 21

V.      CONCLUSION .................................................................................................. 22

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

            Plaintiff

    vs.                            CIVIL ACTION NO. 10-CV-00822(NS)

FLAGSHIP CREDIT CORPORATION,

            Defendant.

## PLAINTIFF'S MOTION FOR FINAL APPROVAL
## OF CLASS ACTION SETTLEMENT

      Pursuant to F. R. Civ. P. 23, Plaintiff Glynn Hartt, by and through his undersigned counsel, hereby seeks final approval of the Class Action Settlement preliminarily approved by this Court by Order docketed February 3, 2011 (Doc. No. 41).  Notice has been provided as ordered; no objections, and only one request for exclusion has been received.  The settlement is fair, reasonable and serves the best interests of the Class.  For these reasons and those set forth in the accompanying Memorandum, Final Approval should be granted.

Date:  3/30/11

                                       /s/ *Cary L. Flitter*
                                     CARY L. FLITTER
                                     THEODORE E. LORENZ
                                     ANDREW M. MILZ

                                     LUNDY, FLITTER, BELDECOS &
                                     BERGER, P.C.
                                     450 N. Narberth Avenue
                                     Narberth, PA  19072
                                     (610) 822-0782

                                     RICHARD TOMLINSON
                                     2601 Gramercy #1203
                                     Houston, TX 77030
                                     (713) 627-2100

                                     **Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLYNN HARTT, individually and on behalf of all others similarly situated,<br><br>       Plaintiff<br><br>  vs.<br><br>FLAGSHIP CREDIT CORPORATION,<br><br>       Defendant. | CIVIL ACTION NO. 10-CV-00822(NS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I. INTRODUCTION

Representative Plaintiff Glynn Hartt ("Hartt"), by counsel, hereby submits this memorandum in support of his Motion for Final Approval of Class Action Settlement. The terms and conditions are set forth in the Settlement Agreement executed January 4, 2011 (the "Settlement Agreement"), a copy of which was presented to the Court and preliminarily approved by Order entered February 3, 2011 (Doc. No. 41). The Settlement Agreement is attached hereto as Exhibit 1. The Agreement calls for over $13,785,000.00 in monetary relief plus valuable equitable type relief correcting the Class Members' consumer credit reports.

On February 9, 2011, in accordance with this Court's preliminary approval Order, the Notice of Proposed Class Action Settlement (the "Notice") was mailed to 913 individual Class Members in Texas whose names appear on Defendant's records. (*See* Affidavit of Risa Neiman of RSM McGladrey, Inc., Class Administrator, in connection With Notice by Mailing, dated March 30, 2011, attached hereto as Exhibit 2). The Notice informed Class Members of the terms and benefits the settlement proposes, and that they had the right to exclude themselves from the Class or object to the settlement by March 26, 2011. (*See* Class Notice, Exhibit 3 hereto). The

1

Notice also advised Class Members that Plaintiff would be applying for an award of attorneys' fees of up to $925,000.00 and costs up to $20,000.00, subject to review and approval of the Court. (*See id.*). Plaintiff moves contemporaneously for an award of Class Counsel fees and costs. [1]   As of the date of this Motion, only <u>one</u> Class Member has requested to be excluded from the settlement and <u>no</u> objections have been received to either the overall settlement or Class Counsel fees and expenses. (*See* Exhibit 2, Neiman Aff't).

As discussed below, the settlement is fair and reasonable and is in the best interests of the Class. The settlement, as proposed, satisfies all of the criteria that courts routinely apply in this Circuit for the approval of class action settlements.

## II.   NATURE OF THE LITIGATION

### *Violations of the UCC's Notice Provisions Asserted by Plaintiff*

Hartt brought a class claim against defendant Flagship Credit Corporation ("Flagship") pursuant to Texas's Uniform Commercial Code ("UCC"). [2]   Flagship is a Pennsylvania-based automobile finance company that maintained a substantial auto loan portfolio in Texas. After a borrower's default, Flagship would repossess and then sell the borrower's vehicle according to its retail installment sales contracts ("RISCs") with borrowers and subject to the requirements of Texas law, including the UCC.

The UCC provides notice requirements that a finance company, such as Flagship, must follow if it wishes to employ self-help repossession. Unlike foreclosure of homes, for example, which requires the procedural safeguards of notice and a hearing, self-help repossession allows a

---

[1]      For convenience, and because the two Motions are interrelated and to be considered at the April 13, 2011 hearing, Plaintiff has prepared a singular, consolidated appendix of exhibits, (a courtesy copy of which shall be delivered to Chambers).

[2]      The Texas legislature refers to that state's UCC as the Texas Business and Commerce Code. For consistency, Plaintiff may continue to refer to the Act as the UCC or Code, while proper citation is to Tex. Bus. & Com. Code.

secured creditor to take a consumer's property without judicial oversight.  Article 9 of the UCC imposes a strict notice regime on lenders such as Flagship to provide borrowers important information after repossession and prior to the sale of the consumer's vehicle at auction.  Tex. Bus. & Com. Code § 9.611-9.614.  The requirements of Article 9 act as statutory safeguards to ensure that lenders operate according to law during repossession and give adequate and proper notice of the sale of the repossessed vehicle after it has been taken from the borrower.  *See Knights of Columbus Cred. Union v. Stock*, 814 S.W.2d 427, 430 (Tex. App. 1991) (purpose of statutory notice "is to allow the debtor an opportunity to protect his interests in the collateral.").  As stated by one federal court, the safeguards of Article 9 exist "to police lenders" who engage in self-help and to deter violations of the law.  *Chisholm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 551 (E.D. Va. 2000).

The Class Complaint here alleged, among other things, that Flagship repossessed and re-sold vehicles belonging to the Plaintiff and the Class in a manner that violated the Texas UCC's notice provisions as well as the parties' retail installment contract.  Specifically, Hartt asserts that Flagship's notice:

(1)      Gave an unreasonably short notice period before sale.  Tex. Bus. & Com. Code § 9612.  Flagship's contract provides that "we will send you notice <u>at least</u> 10 days before we sell it." (Contract or RISC, Exhibit "4" hereto).  However, the Notice says Hartt's car would be sold "at a private sale or auction <u>within</u> 10 days from the date of this letter." (See Repo Notice, Exhibit "5" hereto, emphasis added).

(2)      Fails to advise, as the statute requires, that the "debtor is entitled to an accounting of the unpaid indebtedness, and … the charge, if any, for an accounting." Tex. Bus. & Com. Code §9.613(1)(D) (actionable under 9.614(1)(A)).

(3)     Fails to provide the required "description of any liability for a deficiency." Tex. Bus. & Com. Code § 9.614(1)(B). This means that Mr. Hartt (and the Class) was not told that he would be held responsible for any shortfall after Flagship applied the proceeds from the auction of his car.

Flagship sent similarly deficient notices to some 912 other Texas borrowers who comprise this settlement class. The vast majority were sent a notice identical to that sent to Hartt, i.e. a form notice with the three UCC deficiencies noted above. (Exhibit "5"). Others were sent a form notice lacking in one or two of those respects. (*See* Plaintiff's Renewed Motion for Certification of Settlement Class and for Preliminary Approval (Doc. No. 36) at p. 6 and cited exhibits). Plaintiff asserts that *all* of the notices sent to the Class during the four year class period violate the UCC's requirements in one or more ways.

Plaintiff sought damages under the UCC in the statutory amount of "the credit service charge plus 10% of the principal amount of the obligation," *see* Tex. Bus. & Com. Code § 9.625(c)(2). Flagship has denied liability in the matter. It asserted among other things that the Texas Courts have not spoken directly to the violations claimed, that some putative Class Members should be excluded for a variety of reasons and that deficiency claims are not necessarily barred even if the notice is bad.

***Procedural History, Discovery and Settlement***

On December 10, 2009, Hartt filed his Class Action Complaint in the Court of Common Pleas of Philadelphia County. Flagship then removed the case to this Court on the basis of jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d), 1453, and 1711-1715. An Amended Complaint was filed in this Court on March 10, 2010. (Doc. No. 4).

Shortly after removal, the Court *sua sponte* scheduled an evidentiary hearing for April 12, 2010, to examine whether there was CAFA jurisdiction and if so, whether the matter should be transferred to a federal court in Texas. David Bertoncini testified for Flagship. The Court received hearing memoranda and argument of counsel. At the conclusion of the hearing, the Court asked both sides to brief potential issues of first impression under Texas law and the UCC. The parties did so. (Doc. No. 18 and 20). These issues, some of which were fundamentally tied to the relief sought by Plaintiff and the Class, included whether Flagship could seek alleged deficiency balances owed by Class Members as a set-off to any potential Class recovery or whether Texas's "absolute bar" rule would prohibit the collection of the deficiencies, and whether "substantial compliance" with the UCC's notice requirements was sufficient to meet the requirement for adequate notice. After evaluating the parties' legal positions on these matters, the Court found subject matter jurisdiction was established, and that the substantive UCC issues were not first-impression issues under Texas law. Finding no compelling reason to transfer, the Court retained venue. *See Hartt v. Flagship Credit Corp.*, 2010 WL 2736959 (E.D. Pa. July 8, 2010).

Thereafter, the parties engaged in copious discovery. Flagship deposed Mr. Hartt and his daughter Jessica Sampson here in Philadelphia. Plaintiff deposed David Bertoncini and former Flagship manager, Dan Dissen. Written discovery was exchanged. Flagship produced some 1230 loan files containing some 70,000 pages of documents. Class Counsel reviewed, catalogued and organized this evidence for its use in litigation or settlement. A review of the loan files enabled Class Counsel to understand the Class size, the number and variety of RISCs in use, how many notices were non-conforming, the scope of damages, the claimed deficiency

balances, potential exclusions (bankruptcies, etc.) and the like. (*See* Milz Certification, Exhibit 11, at ¶ 16).

The parties later agreed to submit their controversy to mediation in an effort to reach settlement, if possible. The class certification briefing was stayed once and a mediation was arranged for October 7, 2010 in front of retired U.S. Magistrate Judge Diane Welsh at JAMS. A week before the mediation, the parties exchanged mediation memoranda which included detailed spreadsheets and graphs related to the repossession notices and the makeup of the Class.

On October 7, 2010, the parties and counsel met for a nearly 12-hour mediation session before Judge Welsh. There were many points of contention at the mediation. These involved class size, which notices may violate (and which may not), and issues of what Texas law controlled certain aspects of the case. In particular, the parties disagreed over Flagship's entitlement to alleged deficiency balances against Hartt and the Class for amounts Flagship said were owed after auction sale of the repossessed cars. Flagship contended that these deficiencies acted as a set-off to any Class recovery. Plaintiff disagreed and asserted that Texas law provides for an "absolute bar" where the notice of disposition was unreasonable under the UCC, citing the Court's earlier ruling. Flagship did not agree and asserted that the order on transfer was merely interlocutory and any substantive holding subject to revision.

Independent from the merits of the liability and damages arguments, there were collectability concerns, as Flagship's witnesses testified the company recently had major layoffs, that it sold off or returned much of its portfolio of loans and its future was uncertain. (*See* Depo. of Dan Dissen, Sept. 20, 2010, pp. 25-27, Exhibit "6" hereto). Also, on the eve of mediation, Plaintiff was alerted to a coverage dispute between Flagship and its insurance carrier that threatened coverage for Plaintiff's claims. By the end of the day, the mediation was successful

and the parties had reached an agreement in principle.  After many drafts and edits, the parties reached a formal Settlement Agreement which the parties signed.

Plaintiff filed his unopposed Motion for Preliminary Approval of Class Action Settlement on November 19, 2010.  Thereafter, the parties met for a conference with the Court on December 14, 2010.  The parties decided to make several changes to their settlement terms and signed a revised Settlement Agreement.  On January 5, 2011, Plaintiff filed a Renewed Motion for Preliminary Approval (Doc. No. 36) and Motion for Appointment of Class Settlement Administrator (Doc. No. 37).  By Order docketed February 3, 2011, the Court granted preliminary approval, including approval of Notice to the Class.  (Doc. No. 41).

On February 9, 2011, Notice in the form approved by the Court was mailed to 913 individuals whose names appeared in Flagship's records as being members of the Class.  (*See* Neiman Aff't, Exhibit 2).  As of the date of this Motion, March 30, 2011, there have been <u>no</u> <u>objections</u> and only <u>one</u> request for <u>exclusion</u>.  (*See id.* at ¶¶8-9).  A final approval hearing is scheduled for April 13, 2011 at 2:00 P.M. before the Honorable Norma L. Shapiro.

## III.   <u>NATURE OF SETTLEMENT</u>

This settlement, if finally approved, will provide over $13.785 million in aggregate monetary relief to the Class plus valuable equitable relief in the form of credit report correction.  The significant terms of the class-wide settlement are as follows:

1.      Flagship has paid $2,500,000.00 into a settlement fund.  Those funds will be used to pay Class Members, Class Counsel fees and costs, and administration expenses.  (*See* Settlement Agreement, Exhibit "1" at ¶ 2.05).

2.      Flagship will release all Class Members with a post-repossession sale deficiency balance claimed due by Flagship.  These aggregate deficiency balances to be released via the settlement sum to $11,285,934.66.  (Settlement Agreement at ¶ 5.02; *see also* Settlement Agreement at p. 3 (valuing deficiencies)).

3.    Flagship will satisfy any outstanding monetary judgments it presently holds against Class Members related to claimed deficiency balances due.  Pursuant to the settlement, Flagship will use its reasonable best efforts to see to it that any judgments previously entered against Class Members have been satisfied or released (Settlement Agreement at ¶ 2.09).

4.    Flagship will advise all consumer reporting agencies to whom it reports to either delete entirely any tradeline from the Class Members' credit reports or to report the account balances of Class Members as settled with a zero balance owing on their credit reports (Settlement Agreement at ¶ 2.08a).

5.    Flagship will cease all collection activity on any deficiency balance allegedly owed by Class Members (Settlement Agreement at ¶ 2.08b).

The essential terms of the settlement are set out in the Settlement Agreement attached hereto as Exhibit 1.

The settlement assures that Class Members may each promptly receive a cash payout between $330.00 and $3,300.00 per Class Member, depending on the sum of the "finance charge" plus 10% of the "amount financed" readily identifiable from his/her or her RISC.  As set forth in the Settlement Agreement:

> The Pro Rata Share shall be computed by dividing a Class Member's individual "Statutory Sum" as defined in paragraph [1.21] above by the aggregate total of all Class Members' "Statutory Sums," and then multiplying that percentage by the amount of the Settlement Fund (after the deduction of the payment of approved Class Counsel fees and costs, and notice and administration costs).  For example, Mr. Hartt's Statutory Sum is $17,468.84 and the aggregate total of all Class Members' "Statutory Sums" is $13,434,831.29; assuming that the Court approves the full amount of Class Counsel fees and costs, and notice and administration costs requested, Mr. Hartt's Pro Rata Share to be paid is approximately $1,987.95.

Ex. 1, at ¶2.05(c).

For example, Mr. Hartt's share in the pro rata recovery is illustrated below:

| | MAXIMUM INDIVIDUAL STATUTORY DAMAGES | MAXIMUM INDIVIDUAL STATUTORY DAMAGES AS % OF MAXIMUM CLASS STATUTORY DAMAGES OF $13.434M | PRO RATA CASH RECOVERY (ASSUMING APPROX. $1.529M OF FUND AFTER FEES, COSTS) |
|---|---|---|---|
| GLYNN HARTT | $17,468.84 | 0.13% | $1,987.95 |

In some ways, this settlement represents a better result than could have been achieved through completely successful litigation, when considering the magnitude of the debt cancellation and the equitable type relief obtained in correcting negative credit reporting, discussed *infra*.

The parties represent that the proposed settlement was reached through extensive arms-length negotiations, that the substantive terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy, and that Class Counsel is experienced and well-qualified to evaluate the proposed Settlement Agreement on behalf of the Class Members. Class Counsel recommends the settlement. (*See* Flitter Certification, ¶ 29, Exhibit 8).

The Notice that was sent to each individual Class Member (see Exhibit 3) is sufficient to inform Class Members regarding: (a) the formation of the Class; (b) the Class definition; (c) the terms of the proposed settlement; (d) the proposed request for an award of attorneys' fees and expenses to Class Counsel; (e) the proposed reimbursement for the expenses of the Representative Plaintiff; (f) Class Members' right to exclude themselves from the Class, and thereby not participate in the proposed settlement; (g) Class Members' right to object to the proposed settlement; (h) the time and date of the Final Approval Hearing; and (i) Class Members' right to appear at the Final Approval Hearing in favor of or in opposition to the

proposed settlement.  The Notice provides Class Members with sufficient information to make an intelligent decision as to whether to remain in, exclude themselves, or object to the proposed settlement.

## IV.    LEGAL ARGUMENT

### A.    Factors Bearing on Final Approval

Preliminary approval, granted by order docketed February 3, 2011, was the first of three steps that comprise the approval procedure for settlement of a class action.  At that time, the Court found preliminarily that all the elements of Fed. R. Civ. Pro. 23 had been satisfied and certified the Class for purposes of settlement.  (*See* Order, Doc. No. 41).  The second step was the dissemination of notice of the settlement to all Class Members, which was carried out as the Court directed.  (Ex. "3", Notice).  The third step is the final approval hearing, scheduled for April 13, 2011, at 2:00 p.m.  *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.63 (2004); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007).

The question presented on a motion for final approval of a proposed Class Action Settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation ...; (2) the reaction of the Class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages ...; (6) the risks of maintaining the Class action through trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation...

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500, 517-18 (E.D. Pa. 2007) (Shapiro, S.J.).  After *Girsh*, the Third Circuit has suggested additional factors to consider:  (a) the pleadings, settlement negotiations, and the Class certification motion have developed the underlying substantive issues such that all parties may

assess the merits of the claims and defenses; (b) members of the Class have had a sufficient opportunity to opt out of the settlement; (c) the award to the Representative Plaintiff is fair, adequate and reasonable; and (d) the procedures for processing the individual claims under the settlement are fair and reasonable. *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 323 (3d Cir. 1998).

The Third Circuit has instructed district courts to "make findings as to each of the nine *Girsh* factors in order to approve a settlement as fair, reasonable, and adequate, as required by Rule 23(e)." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). "The factors [ ] identified in *Prudential* are illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms." *Id.* An evaluation of the relevant factors demonstrates that the settlement here fits well within the range of reasonableness.

1.    The Complexity, Expense and Likely Duration of the Litigation

This first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *Warfarin Sodium Antitr. Litig.*, 391 F.3d 516, 535-36 (3d Cir. 2004). Absent this settlement, expensive litigation would continue. Flagship maintains *inter alia*, it has not violated the UCC, that the statutory damages are subject to setoff, and that some putative Class Members should be excluded from the Class.

If this case were to continue, there would need to be contested Class certification practice and argument over whether particular Class Members should or should not be excluded for reasons such as arbitration or vehicle usage. Dispositive motions would be filed as to liability and available damages recoverable under the UCC, and costly pre-trial briefing and trial preparation on both sides would be necessary. Given Defendant's counterclaim and position that Plaintiff and the Class owe deficiencies, the Court would have to rule conclusively whether the

claims are barred, and procedurally whether they could possibly attach to this litigation.  In the meantime, the Class Members would be forced to wait out this litigation – and continue to suffer the impact of the adverse credit reporting *pendent lite*.  It is unlikely here that more litigation would result in more value to the Class.

Avoidance of this unnecessary expenditure of time and resources benefits all parties and is to be encouraged.  *See In re Gen. Motors Pick-Up Trust Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant were facts favoring settlement, which offers immediate benefits and avoids delay and expense).  As a result of the settlement, all issues in this litigation will be resolved once and for all.

     2.     <u>The Reaction of the Class to the Settlement</u>

As set forth above, 913 notices were mailed to members of the Class advising them of the terms of the settlement and their right to object or exclude themselves from the Class.  (*See* Aff't, Exhibit "2").  The deadline for Class Members to exclude or to object was March 26, 2011.  (*See id.*).  According to Settlement Administrator RSM McGladrey, as of March 29, 2011, only one Class Member had exercised the right to exclude themselves.  Significantly, <u>no</u> Class Member has filed nor served counsel with an objection to any aspect of the proposed settlement. (*Id.*).

The fact that there was only 1 request for exclusion and 0 objections out of over 913 mailed notices is convincing evidence of the proposed settlement's fairness and adequacy.  *See Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d 402, 418 (E.D. Pa. 2010) ("no Class Member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee"); *In re Rite Aid Sec. Litig.*, 269 F. Supp. 2d 603, 608 (E.D. Pa. 2003) (the

absence of any objection and *de minimis* requests for exclusion tips "heavily in favor of a strong presumption of fairness"); *see also Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (noting the second *Girsh* factor "strongly favor[ed]" settlement where only 29 of 281 Class Members objected). The unanimous, positive reaction of the Class here weighs heavily in favor of the proposed settlement.

    3.  <u>The Stage of the Proceedings and the Amount of Discovery Completed</u>

   For a settlement to be approved, the parties must have an "adequate appreciation" of the merits of the case. *In re Prudential*, 148 F.3d at 319. The settlement here comes only after Plaintiff obtained sufficient discovery to evaluate important aspects of this case, including: the prospects of the case for Class certification, the likelihood of contentious motion practice related to liability and Class certification, the potential for a trial on the merits and subsequent appeal (all with attendant briefing), the likelihood of additional discovery and motion practice, and the projected time and cost associated with lengthier settlement negotiations to resolve the matter.

   Plaintiff proffered and Defendant, in turn, answered (with some objection) interrogatories and request for documents. Flagship produced over 70,000 pages of documents in the loan files of over 1230 Texas consumers. (Not all repossession Notices were non-compliant and some borrowers were no longer resident in Texas, yielding the 913 Class Members within the parameters of the Class definition). Class Counsel spent over 430 man-hours in the painstaking review and cataloging of each borrower's file – analyzing, *inter alia*, the retail installment sales contract, notice of disposition, deficiency calculation, and other important documents. (*See* Flitter Certification, ¶ 25; Milz Cert. at ¶ 16). This was required to evaluate whether Flagship's notice to that consumer violated the UCC, if so, the statutory damages to which they were entitled, and finally, whether one or more of Flagship's asserted defenses – arbitration,

bankruptcy, etc. – applied to each prospective Class Member. From this discovery, Plaintiff was able to identify the common claim of improper notice and able to identify the total statutory damages at play in the case.

There were four depositions. Flagship deposed Glynn Hartt and his daughter, Jessica Sampson (for whom Mr. Hartt bought the car that was ultimately repossessed). Plaintiff deposed Flagship's representative, David Bertoncini and Daniel Dissen. From these latter depositions, Plaintiff learned why Flagship's notices of disposition were defective in different respects, largely as a result of changes made by particular repossession personnel at Flagship. Through these depositions, Plaintiff first learned that Flagship has viability concerns, thereby injecting collectability into the litigation calculus.

What is certain is that continued litigation would have forced all these issues to the fore and resulted in contentious certification and merits motion practice, rather than the safe and secure deposit of funds into a local bank – which is what has happened here as a result of the settlement.

The parties approached settlement with a full appreciation of what discovery revealed and what further litigation would entail. As a result of the parties' efforts, the litigation had reached the critical stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Reibstein v. Rite Aid Corp.*, --- F. Supp.2d ----, 2011 WL 192512 (E.D. Pa. Jan. 18, 2011); *Bonett v. Educ. Debt Servs., Inc.*, 2003 WL 21658267 *6 (E.D. Pa. May 9, 2003). This factor favors settlement.

4.      The Risks of Establishing Liability

This factor surveys the possible risks of litigation in order to balance the likelihood of success and potential damages against benefit of settlement. *In re Prudential*, 148 F.3d at 319.

14

Plaintiff maintains that liability in this case is strong, *i.e.*, that Defendant sent out form notices of disposition of collateral which violated the UCC's notice requirements. Under Plaintiff's theory of the case, each of Flagship's notice sent to members of the Class was lacking in at least one respect as relates to those notice requirements. Plaintiff has asserted that if the notification sent in a consumer goods transaction lacks any of the required information, it is insufficient as a matter of law. *See* 66 Tex. Jur. 3d (Secured Transactions) § 334 (*citing* Official 1999 UCC Comment 2 to § 9.614, Tex. Bus. & Com. Code); *Knights of Columbus Cred. Union v. Stock*, 814 S.W. 2d 427, 430-31 (Tex. App. 1991). Flagship argued otherwise. (*See* Def. Mem. of Law, Doc No. 18 at 6-7).

Although Plaintiff is confident of his position, as with any civil case in this courthouse there is no guarantee that Plaintiff would ultimately succeed on liability. This consideration weighs neutral.

     5.     <u>The Risks of Establishing Damages</u>

Because Plaintiff's legal theory invoked statutory damages, Plaintiff does not believe that damages would fail for reasons of *e.g.*, causation. The greater risk in "establishing damages" was aligned with collecting any damages (a factor intertwined with *Girsh* factor # 7). As stated above, there was the real threat here that establishing liability may very well be an empty victory if the Class could not recover from Flagship. The finance company's witnesses testified that the firm has had major layoffs, that it sold off or returned most of its portfolio of loans and its future was uncertain. (*See* Depo. of Dan Dissen, Sept. 20, 2010, pp. 25-27, Exhibit "6" hereto). Immediately prior to mediation, Class Counsel was alerted to a coverage dispute between Flagship and its insurance carrier. That dispute resulted in Flagship filing a complaint for

declaratory judgment. *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, U.S.D.C. S.D. Tx. No. 4:10-CV-3616.

Further, Flagship asserted throughout the case that it believed it had a legal right to set-off the deficiency balances it alleged the Class Members owed after the sale of their vehicles. While Plaintiff opposed this, and maintains he has the better of this argument in light of Texas' "absolute bar" rule, the Court's ruling could be reconsidered. It is unlikely that Plaintiff could have secured through a verdict or court award the type of comprehensive, valuable award secured through this settlement. This factor favors settlement.

6.      The Risks of Maintaining the Class Action Through Trial

This Court certified a Class for purposes of preliminary approval (Doc. No. 41), but there was not a certification on contest. The Supreme Court has recognized the utility of Class actions in certain cases alleging consumer or securities fraud or violations of antitrust laws. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). This consumer protection case fits that mold, and Plaintiff refers the Court to his discussion of the elements of Rule 23 discussed in his Motion for Preliminary Approval (Doc. No. 36).

During this litigation, Flagship raised the possibility that some Class Members should be excluded on account of their file containing a document bearing an arbitration clause or class action waiver. Arbitration clauses have resulted in the undoing of other class action cases. *See e.g. Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007). In theory, this could result in some Class Members being excluded.[3] For his part, Plaintiff contends that many of these files contained similarly-worded clauses that could be knocked-out by a uniform legal attack focusing on scope and substantive defects. In the same vein, Flagship contended that other Class Members should

---

[3]      Plaintiff believes that many of these dealer agreements carried arbitration clauses that did not extend to assignees (like Flagship). But, litigation *en masse* over arbitration clauses is a potential impediment to certification on contest.

be excluded because they: waived their right to notice, had an out-of-Texas address in their files, did not receive the (allegedly defective) notice, or filed bankruptcy. Settlement eliminates the need to litigate these potential individualized issues which might have posed a threat to certification. This *Girsh* factor favors approval of the settlement.

       7.      <u>The Ability of the Defendant to Withstand a Greater Judgment</u>

This settlement calls for Defendant to pay a total of $2.5 million in cash (already on deposit), to erase over $11.285 million in claimed deficiencies, and to correct negative credit reporting on the Class Members. It is unclear whether Flagship could have withstood a greater damage amount sustained at trial. As discussed under *Girsh* factor #5, *supra*, very real concerns about Flagship's viability and the potential for no insurance coverage arose over the course of the litigation. Even a "greater" damages award may not have rendered a net greater benefit to the consumers in this Class. This factor weighs in favor of settlement.

       8.     <u>*Girsh* Factors (8) The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery & (9) The Range of Reasonableness of the Settlement to a Possible Recovery in Light of all the Attendant Risks of Litigation</u>

An assessment of the reasonableness of a proposed settlement requires analysis of the present value of the damages a plaintiff would likely recover if successful, appropriately discounted for the risk of not prevailing. *In re Prudential*, 148 F.3d at 322. "Settlement represents a compromise in which the highest hopes of recovery are yielded in exchange for certainty and resolution and courts should guard against demanding too large a settlement based on the court's view of the merits of the litigation." *In re Safety Components Int'l, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 92 (D.N.J. 2002) (internal citation omitted).

The *best possible recovery* on Plaintiff's claim that Defendant's repossession notices violated Texas law would be that Defendant would be required to pay statutory damages of approximately $13.434 million dollars (the total aggregate statutory damages of the 913 Class Members, without considering exclusion of any Class Members for assorted reasons). Compared to this, the value of this settlement exceeds this "home run" amount, when factoring the cancelled deficiency balances, even before taking the valuable credit repair into the equation. The settlement provides $13.785 million in monetary relief by a common fund in the substantial amount of $2,500,000 in cash and $11,285,934 in debt forgiveness. Plaintiff recognizes that debt cancellation or waiver is extremely valuable to some, less to others. However, a pure UCC remedy would not have necessarily eliminated any Class Member's "deficiency". A deficiency could have acted as a "set-off" to any relief should Flagship have had its way.

Significantly, the settlement <u>also</u> calls for the removal of Flagship's negative entries on the Class Members' credit reports. While this relief is not as easily quantifiable as the cash settlement fund or the debt cancellation, it provides a tangible and valuable award to each Class Member. As stated in the expert opinion of David Stivers, attached hereto as Exhibit 7, the credit relief contemplated by this settlement will improve the credit rating of <u>all</u> the Class Members and allow them to likely enjoy more favorable borrowing options and interest rates in future credit opportunities. (*See generally id.* at p. 7 of report).

Specifically, Mr. Stivers opines that the credit repair contemplated by this settlement will positively impact Class Members' attempts to attain a loan or mortgage, increase their ability to apply for insurance at favorable rates, reduce occurrences of "adverse actions" based on negative credit, and generally increase their credit scores. (*See id.* at *passim*). This is because removal of the negative entry would improve the consumer's risk profile in the credit grantor's eyes. Prior

to the class member's "charge off" entry being removed, prospective lenders would view this negative notation as a sign of a credit risk and assign a correspondingly higher interest rate. (*Id.* at 9). Removal of the "charge off" notation will result in a higher credit score and a potentially lower risk perceived by the lender -- resulting in a potentially lower interest rate. (*See id.* at 9-10). Of course, each Class Member will benefit differently depending on his or her individual credit situation, but all will obtain substantial relief through the credit improvement.

The cash awards and debt cancellation, coupled with valuable credit reparations and satisfaction of outstanding judgments against Class Members constitutes relief valued at well over $13.785 million and makes this settlement on par with, or better than, the best-case trial scenario of $13.434 million. Of course, a final litigated resolution could be years away with uncertainty throughout trial and appeal – and uncertainty over collectability.

As set forth in the chart in Section III above, the settlement assures that Class Members may each promptly receive a cash payout between $330.00 and $3,300.00 on a pro rata basis tethered directly to the statutory damages of Section 9.625, *i.e.*, the "finance charge" and 10% of the "amount financed" readily identifiable from his/her or her RISC. (Exhibit 1, at ¶2.05(c)). Again, there is real value in <u>immediate</u> corrections to the consumer credit reports and satisfaction of judgments already obtained. In *In re Greenwich Pharmaceutical Securities Litigation*, 1995 WL 251293 (E.D. Pa. April 26, 1995), the court held in finding a $4.3 million settlement within the range of reasonableness where plaintiff's estimate of damages was $100 million (*i.e.*, 4.3% of best case scenario):

> [P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and vigorous claim of no damages. When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness."

Class Counsel endorses this settlement because it is very favorable for the Class in light of the collectability issues, and the nature of the violation and the immediate equitable-type relief it provides. The opinion of experienced Class Counsel that settlement is in the best interest of the Class is entitled to "significant weight." *Lake v. First Nationwide Bank,* 900 F. Supp. 726, 732 (E.D. Pa. 1995). These factors bring the proposed settlement well within the range of reasonableness, and indeed point to an excellent settlement – one that should be approved.

      9.    <u>Additional Factors</u>

In considering the relevant factors discussed in *In re Prudential*, 148 F.3d at 323, and this record (see the foregoing discussion), the Court should find that (a) the pleadings, settlement negotiations, and the examination of factors related to potential Class certification have developed the underlying substantive issues such that all parties appreciate the merits of the claims; (b) members of the Class have had a sufficient opportunity to opt out of the settlement; (c) the award to the Representative Plaintiff, discussed below, is fair, adequate and reasonable; and (d) the easy procedures for processing the Class Member claims under the settlement are fair and reasonable. This settlement payment requires no claim form. The settlement checks will be mailed to the Class Members. The relief will be scaled to reflect a uniform percentage of each member's statutory damages under the Code. And, there is no reverter of any undistributable funds to Flagship. (Exhibit 1, Settlement Agreement at ¶ 2.05). Again, the absence of <u>any</u> objection speaks persuasively for this settlement.

In conclusion, all of the factors discussed above weigh in favor of, or weigh neutral towards approval of the settlement of this Class Action.

### B.      Expense Reimbursement to Mr. Hartt

The Settlement Agreement calls for Mr. Hartt to receive his pro rata share of the settlement find, and also calls for him to be paid the reasonable expenses he incurred in acting as Representative Plaintiff.  Mr. Hartt personally met with counsel in Texas and Pennsylvania, engaged in numerous phone conversations about the status of the case, sat for a deposition, attended the day-long Mediation in Philadelphia, and generally went out of his way to serve the best interest of the Class at his own expense.  In order to do so, Mr. Hartt was compelled to use sparse vacation time from work and spend sums of his own money.   Although no Class Representative incentive award is being sought, expense reimbursement is.  As set forth in the Certification of Glynn Hartt (Exhibit 14 hereto), Mr. Hartt's expenses of $1,260.00 were incurred, are reasonable and necessary, and should be approved.  *See First State Orthopaedics*, 534 F. Supp. 2d at 524 ("Reasonable payments are permissible to compensate named plaintiffs for the expenses they incur during the course of class action litigation.").

### C.      Cy Pres

Courts have long recognized the utility of *cy pres* remedies, particularly for undistributable funds and in consumer protection cases such as this where individual claims of the Class Members are relatively small.  *See e.g.*, *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105, 117 (E.D. Pa. 2005).  As of this writing, with the use of several locator databases there are about 50 undeliverable class notices. (*See* Aff't of Risa Neiman of RSM McGladrey, Inc., Exhibit 2).  In the event there are any uncashed checks distributed pursuant to the terms of the Settlement Agreement, those funds shall also be donated as a *cy pres* distribution in equal parts to Philadelphia Legal Assistance, the University of Houston Center for Consumer Law and Texas Rio Grande Legal Aid for use in consumer credit education and counseling and similar

uses.  (*See* Exhibit 1, Settlement Agreement., at ¶ 3.05).   These institutions are worthy beneficiaries.  Mr. Hartt endorses this *cy pres* and Defendant concurs.

## V.  <u>CONCLUSION</u>

For the reasons detailed herein, Plaintiff Glynn Hartt respectfully requests that this Court grant his motion for final approval of this Class action settlement.

Date:   3/30/11

/s/ Cary L. Flitter
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ
LUNDY, FLITTER, BELDECOS &
BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

RICHARD TOMLINSON
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100
**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

                   Plaintiff

      vs.

FLAGSHIP CREDIT CORPORATION,

                Defendant.

CIVIL ACTION NO. 10-CV-00822(NS)

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2011, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which sent notification of such filing to:

Marc J. Sonnenfeld, Esquire
John P. Lavelle, Jr., Esquire
Iddo Harel, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921

Said document is available for viewing and downloading from the ECF system

Date:   3/30/11

                                  */s/Cary L. Flitter*
                                  CARY L. FLITTER