IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLYNN HARTT, individually and on behalf of all others similarly situated, | |
| Plaintiff | |
| vs. | CIVIL ACTION NO. 10-CV-00822(NS) |
| FLAGSHIP CREDIT CORPORATION, | |
| Defendant. | |

**PLAINTIFF'S MOTION FOR THE
AWARD OF ATTORNEYS' FEES AND COSTS**

**PLAINTIFF'S MEMORANDUM OF LAW IN
SUPPORT THEREOF**

**Dated:  3/30/11**

**LUNDY, FLITTER, BELDECOS &
BERGER, P.C.**
**CARY L. FLITTER**
**THEODORE E. LORENZ**
**ANDREW M. MILZ**
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

**RICHARD TOMLINSON**
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100

**Attorneys for Plaintiff and the Class**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     NATURE OF THE LITIGATION................................................................... 4

III.    NATURE OF SETTLEMENT ....................................................................... 4

IV.     LEGAL ARGUMENT.................................................................................... 6

        A.      The Equitable Foundation for Awards of Attorneys' Fees in Representative
        Actions ......................................................................................................... 6

        B.      Plaintiff's Fee Request is Fair and Reasonable Under Third Circuit
        Jurisprudence................................................................................................8

                1.      Size and nature of the common fund created, and the number of persons
                benefited ...................................................................................... 9

                2.      The presence or absence of substantial objections to the request for fees .......... 10

                3.      The skill and efficiency of Class Counsel ........................................... 11

                4.      The complexity and duration of the litigation .................................... 12

                5.      The risk of nonpayment.................................................................. 16

                6.      The amount of time devoted to the litigation .................................... 17

                7.      Awards in similar cases.................................................................. 20

                a  The fee requested here is similar to fees awarded in comparable
                   settlements........................................................................... 20

                b. The fee requested is consistent with a privately negotiated contingent fee in
                   the marketplace ................................................................... 21

        C.      Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee........ 22

        D.      Reimbursement of Class Counsel's Expenses .................................... 24

V.      CONCLUSION............................................................................................ 29

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

                    Plaintiff

          vs.                                    CIVIL ACTION NO. 10-CV-00822(NS)

FLAGSHIP CREDIT CORPORATION,

                    Defendant.

**PLAINTIFF'S MOTION FOR THE**
**AWARD OF ATTORNEYS' FEES AND COSTS**

Plaintiff Glynn Hartt moves the Court for an award of Class Counsel fees and costs. The Plaintiff has achieved a favorable Class settlement of his claim for violations of Texas's Uniform Commercial Code arising from Defendant's repossession practices.

Plaintiff seeks Class Counsel fees from the common fund in the amount of $925,000.00, plus expense reimbursement of $17,077.92. The requested fees represent less than 6.8% of the total settlement relief attained for the Class through this lawsuit. An excellent result has been achieved for the Class. Class Counsel has prosecuted this matter efficiently and expeditiously on an entirely contingent fee basis. Class Counsel fees were disclosed in the Class Notice. No Class Member has lodged objection to the requested fees. Because the fees requested are reasonable and entirely in keeping with circuit precedent on the award of Class Counsel fees from a common fund created, the Motion should be granted.

Plaintiff incorporates herein the attached Memorandum, the Certifications of attorneys Cary L. Flitter, Theodore E. Lorenz, Andrew M. Milz, Richard Tomlinson, and other exhibits in support of this Motion, as well as the contents of Plaintiff's Motion for Final Approval that is being filed contemporaneously herewith.

Date: 3/30/11

*/s/ Cary L. Flitter*
CARY L. FLITTER
THEODORE E. LORENZ
ANDREW M. MILZ

LUNDY, FLITTER, BELDECOS & BERGER, P.C.
450 N. Narberth Avenue
Narberth, PA  19072
(610) 822-0782

RICHARD TOMLINSON
2601 Gramercy #1203
Houston, TX 77030
(713) 627-2100

**Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

                Plaintiff

     vs.                                CIVIL ACTION NO. 10-CV-00822(NS)

FLAGSHIP CREDIT CORPORATION,

                Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR THE AWARD OF ATTORNEYS' FEES AND COSTS

## I.    INTRODUCTION

Representative Plaintiff Glynn Hartt ("Hartt"), by counsel, hereby moves for an award of $925,000.00 in attorneys' fees and $17,077.92 in expense reimbursement to the two law firms serving as Class Counsel in this case. Plaintiff sued and reached a favorable Class settlement on his claim of non-compliant repossession notice pursuant to Texas's Uniform Commercial Code, Tex. Bus. & Com. Code § 9.611-9.614. Final approval is being sought by separate Motion filed contemporaneously.

The settlement agreement with Defendant Flagship Credit Corporation ("Flagship") calls for cash of $2,500,000.00, the cancellation of over $11,285,000.00 in post-auction deficiency balances, the repair of Class Members' credit reports (whereby Flagship will delete its reporting or report Class Members as having a $0 balance), and satisfaction of any outstanding judgments. (Exhibit 1, Settlement Agreement). The cash award coupled with the debt cancellation before inclusion of the valuable credit repair, yields a common fund exceeding $13.785 million in aggregate relief to the Class.

By Order dated February 3, 2011, this Court granted preliminary approval to this Class action settlement (Doc. No. 41) and on February 9, 2011 notice went out by mail to the Class of 913 Texas consumers.[1] (Exhibit 2 hereto, Affidavit of Risa Neiman, of RSM McGladrey at ¶ 3). The Settlement Agreement states that Plaintiff will seek an award of Class Counsel fees in an amount not to exceed $925,000.00 and costs not to exceed $20,000.00 to be paid from the cash portion of the common fund. The Notice so advised Class Members. (Exhibit 3, Notice) The date to object concluded March 26, 2011. As of the date of the filing of this Motion (March 30, 2011), there have been no objections to the amount of Class Counsel fees sought nor objections to this class action settlement generally. Plaintiff hereby seeks approval of $925,000.00 in fees for Class Counsel. Costs have come in under the $20,000.00 estimate, at $17,077.92 for both firms, for which Plaintiff also seeks approval from the fund.

This memorandum focuses on the legal and factual standards applicable to an award of attorneys' fees awardable from a common fund, and the appropriateness of the fees and expenses requested by Plaintiff here. As discussed below, this application is warranted by a number of factors, including the substantial relief Class Counsel achieved for Plaintiff and the Class; the numerous risks undertaken by Class Counsel; Class Counsel's vigorous and skillful prosecution of this consumer protection action, the absence of any objection to the requested fees, and the relatively modest size of the fee requested as compared to the total relief obtained.

This action was undertaken and prosecuted on a wholly contingent basis, a factor the Court may consider in evaluating this fee motion. *See Serrano v. Sterling Testing Sys.*, 711 F. Supp. 2d 402, 423 (E.D. Pa. 2010). To date, Class Counsel has not been compensated in any way for their efforts in litigating this case on behalf of the Class. Plaintiff also points out that the

---

[1] The Court will recall that while the Class is composed of Texas residents, the Defendant lender is based in suburban Philadelphia. The Court found that there was no compelling reason to transfer the matter under 28 U.S.C. § 1404 and venue was retained in this district. *Hartt v. Flagship Credit*, 2010 WL 2736959 (E.D. Pa. July 8, 2010).

UCC, under which this claim arose, does not provide for attorney fee-shifting, *i.e.*, no statutory counsel fees.

The fee request of $925,000.00 to be paid from the common fund is reasonable under Third Circuit jurisprudence for evaluating class action fee awards. The requested amount represents less than 6.8% of the aggregate value of the $13.785 million before consideration of the valuable credit repair. (The fees requested comprise about 37% of the cash-only component of the settlement).

Correspondingly, under the lodestar cross-check method of calculating attorneys' fees in class litigation, the fees sought by Class Counsel in this Action represent about 2.08 times its total lodestar (i.e., time billed at regular billing rates). This falls at the middle of the range of the lodestar cross-check multiplier analysis, and well within the range approved in this District for class cases. *See e.g. First State Orthopaedics v. Concentra, Inc.*, 534 F. Supp. 2d 500 (E.D. Pa. 2007) (Shapiro, S.J.) ("Lodestar multipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied", awarding 1.9 and citing cases); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (approving multiplier "in the range of 4.5 to 8.5" (awarding 6.96)).

As demonstrated below, under either the percentage of recovery or the lodestar/multiplier approach, the award sought will fairly and reasonably compensate Class Counsel for its successful efforts on behalf of the Class in a manner that reflects how counsel would be compensated for similar services in non-representational litigation. *See In re Diet Drugs Prods. Liab. Litig.*, 553 F. Supp. 2d 442, 482 (E.D. Pa. 2008) ("the goal of the fee setting process is to determine what the lawyer would receive if he were selling his services in the market rather than

being paid by Court Order") (quotes and citations omitted). As shown below, the requested award is well supported by the "market" approach, and should be approved by the Court.

The lack of objection from any Class Members is itself strong evidence that Class Counsel's fee request is fair and should be granted. *See Diet Drugs*, 553 F. Supp. 2d at 473. (dearth of objections "signifies that the requested award has been viewed by interested parties to this action as fair"); *Serrano*, 711 F. Supp. 2d at 418 ("no Class Member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee.").

For these reasons and those set forth below, Plaintiff's Motion for Approval of Class Counsel Fees and Expenses should be granted.

## II.   NATURE OF THE LITIGATION

Plaintiff incorporates herein the "Nature of the Litigation" section of the Motion for Final Approval filed concurrently with this Motion.[2]

## III.   NATURE OF SETTLEMENT

### *The Settlement Terms*

The significant terms of the class-wide settlement are as follows:

1.      Flagship has paid $2,500,000.00 into a settlement fund on deposit at PNC Bank. Those funds will be used to pay Class Members, Class Counsel fees and costs, and administration expenses. (*See* Settlement Agreement, Exhibit 1 at ¶ 2.05).

2.      Flagship will release all Class Members with a post-repossession sale deficiency balance claimed due by Flagship. These aggregate deficiency balances to be released via the settlement approximate to $11,285,934.66. (Settlement Agreement at ¶ 5.02; *see also* Settlement Agreement at p. 3 (valuing deficiencies)).

3.      Flagship will satisfy any outstanding monetary judgments it presently holds against Class Members related to claimed deficiency balances due.  Pursuant to the

---

[2]      For convenience, and because the two Motions are interrelated and to be considered at the April 13, 2011 hearing, Plaintiff has prepared a singular, consolidated appendix of exhibits, which shall be delivered to Chambers.

settlement, Flagship will use its reasonable best efforts to see to it that any judgments previously entered against Class Members have been satisfied or released (Settlement Agreement at ¶ 2.09).

4.      Flagship will advise all consumer reporting agencies to whom it reports to either delete entirely any tradeline from the Class Members' credit reports or to report the account balances of Class Members as settled with a zero balance owing on their credit reports (Sett. Agreement at ¶ 2.08a).

5.      Flagship will cease all collection activity on any deficiency balance allegedly owed by Class Members (Settlement Agreement at ¶ 2.08b).

(Exhibit 1, Settlement Agreement.)

### The Aggregate Benefit to the Class

As noted, the settlement includes the $2.5 million in cash, $11.285 million in debt cancellation (equals $13.785 million) and the harder to quantify – but extremely valuable – benefit of credit repair.  While this last element is more valuable to some than to others, every Class Member will benefit from having Flagship correct the reported credit tradelines that appear on his/her consumer reports.   Where a settlement agreement provides both monetary and equitable relief to the Class (such as credit report correction), "a fair assessment of the total relief must also include the value of the equitable relief."  *Ciccarone v. B.J. Marchese, Inc.*, 2004 WL 2966932 (E.D. Pa. Dec. 22, 2004) (Shapiro, J.) (consumer class action; credit report correction provided as part of class relief).

Plaintiff has engaged David Stivers, an expert in auto finance and credit worthiness issues.  As stated in the Stivers' expert report, appendix Exhibit 7, the credit relief contemplated by this settlement should improve the credit rating of all the Class Members and allow them potentially to enjoy more favorable borrowing options and interest rates in future credit opportunities. A "charge off" notation related to a repossession and claimed deficiency is a significant negative factor in a consumer's credit. (*See generally id.* at p. 4 of report).  This

notation should be removed. Mr. Stivers opines that the credit repair contemplated by this settlement will positively impact Class Members' attempts to attain a loan or mortgage, add to their ability to apply for insurance at favorable rates, reduce occurrences of "adverse actions" based on negative credit, and generally increase their credit scores. *See id.* According to Stivers:

> [U]pdating one's credit account status from "charge off" to "settled, zero balance" will improve one's credit score in a range of from twenty five up to sixty points. The amount of the credit score increase will depend upon the number of other credit accounts listed, the types of accounts listed, and their payment histories. Credit score increases will be a benefit to all Class Members.

(*Id.* at p. 7). The credit improvement can yield hundreds of dollars – or in the case of a mortgage loan – tens of thousands of dollars of value in reduced borrowing costs of Class Members. (*See id.* at p. 10-13). This naturally equates to millions in additional relief attained by this settlement. This relief will benefit Class Members well into the future, as negative account data typically remains on a credit report for a period of seven years. *See* 15 U.S.C. §1681c(a).

In light of all these circumstances, the comprehensive relief afforded by the credit correction portion of the settlement is substantial in its own right and pushes the total benefit to the Class well over the $13.785 million figure.

## IV.     LEGAL ARGUMENT

### A.     The Equitable Foundation for Awards of Attorneys' Fees in Representative Actions

Since 1882, the United States Supreme Court has consistently held that one who successfully pursues a lawsuit that creates a common fund is entitled to reasonable compensation from the fund as a whole. *Trustees v. Greenough*, 105 U.S. 527 (1882). *See also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Mills v. Electric Auto Lite Co.*, 396 U.S. 375 (1970). The Supreme Court explicitly recognized an attorney's right to receive a reasonable fee from a

common fund in *Central Railroad & Banking of Georgia v. Pettus*, 113 U.S. 116, 124 (1885), on the grounds that it is within a court's equitable power to compensate a person who maintains a suit that results in the creation, preservation, or increase of a fund in which others have a common interest.   "The underlying justification for attorney reimbursement from a common fund, as explained by the Supreme Court in three early cases, is that unless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (*citing Sprague*, 307 U.S. at 166-67; *Pettus*, 113 U.S. at 126-27; and *Greenough*, 105 U.S. at 532); accord *In re General Motors Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995).

The award of attorneys' fees based upon the common fund recovery is, in part, based upon the fact that without counsel willing to institute representative actions, individuals whose losses are too small to justify litigation would have no recourse at all. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338 (1980) (The financial inducements offered by the class action procedure have played an important role "in vindicating the rights of individuals who might otherwise not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost.").

The importance of contingent fee-based litigation is particularly evident in the context of cases brought for consumer protection, such as this one.   The U.S. Supreme Court has consistently recognized the value of private litigation as a necessary and desirable tool to assure the effective enforcement of the consumer protection, securities and antitrust laws. *See, e.g., Pillsbury Co. v. Conboy*, 459 U.S. 248, 263 (1983); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Constar Int'l Inc. Sec. Litig.*, 585 F.3d 774, 781 (3d Cir. 2009).

The requested fee is well within the parameters set by Third Circuit jurisprudence, the "percentage of recovery" basis, and as adjudged against the lodestar/multiplier approach as a "cross-check."

### B. Plaintiff's Fee Request is Fair and Reasonable Under Third Circuit Jurisprudence

The "percentage of the fund" method is the favored approach in this Circuit. *See, e.g., In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("In common fund cases such as this one, the percentage-of-recovery method is generally favored because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotations and citation omitted); *see also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 333 (3d Cir. 1998) (same); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) (same); *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 734 (3d Cir. 2001)("The percentage-of-recovery method has long been used in this Circuit in common-fund cases.").

Several non-exclusive factors guide a district court's fee-award discretion. *See First State Orthopaedics*, 534 F. Supp. 2d at 523; *see also In re Rite Aid,* 396 F.3d at 301. In *Gunter v. Ridgewood Energy Corp.*, the Third Circuit set forth the factors for the Court's consideration. 223 F.3d 190, 195 (3d Cir. 2000) (overturning a decision that reduced to 18% a requested fee of 25% of the recovered fund). Notably, the *Gunter* factors "need not be applied in a formulaic way, and their weight may vary on a case-by-case basis." *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 WL 2137224, *14 (E.D. Pa. July 16, 2009) (Schiller, J.) (quoting *Oh v. AT & T Corp.*, 225 F.R.D. 142, 146 (D.N.J. 2004)).

The *Gunter* factors include (1) size of the fund created and number of persons benefiting from the settlement; (2) presence/absence of substantial objections to the fee; (3) skill of plaintiffs' counsel; (4) complexity and duration of the litigation; (5) risk of nonpayment; (6)

amount of time devoted to the litigation; and (7) awards in similar cases. *Gunter*, 223 F.3d at 195. As described below, analysis of the *Gunter* factors support the requested fee.

1. **Size and nature of the common fund created, and the number of persons benefited**

As noted, the common fund here consists of cash recovery of $2.5 million, over $11.285 million in erased deficiency debt and valuable credit report correction. Each Class Member stands to receive a check for between $330 and $3,300, based upon the amount of statutory damages recoverable (calculated at the finance charge + 10% of the loan amount). Also, each stands to have a deficiency balance claimed due by Flagship completely forgiven, a benefit that averages to about $12,360 per Class Member.[3] Further, any credit reporting related to the claimed deficiency will be removed or marked paid and any judgment taken by Flagship will be deemed satisfied. (Settlement Agreement at ¶ 2.09). It is doubtful that these latter benefits – the credit report correction and judgment satisfaction – would even be available to the Class had this case gone to trial, as the UCC section invoked does not provide such remedy. Tex. Bus. & Com. Code § 9.625(c). In light of the foregoing, the average Class Members' monetary benefit is worth over $14,000 each.

The requested fees represent about 37% of the cash portion of the settlement, and less than 6.8% of the aggregate value when including debt cancellation, but before equitable relief. As noted, it is appropriate to consider all the relief in considering the reasonableness of Class Counsel fees. *See Ciccarone*, 2004 WL 2966932, at *9-10.

Through this Class action and the efforts of the Class Representative Hartt and Class Counsel, over 900 Texas consumers who had their car(s) repossessed will obtain a real cash

---

[3]     The average obtained by dividing the debt forgiveness of $11,285,000.00 by 913 Class Members yields $12,360.00. *Average* cash of approximately $1,675.00 per Class Member obtained by dividing expected available cash (after fees, expenses and administration) of $1,530,000.00 by 913.

benefit plus substantial debt forgiveness despite the risks of establishing liability and damages. The strong numbers here weigh heavily in favor of granting the fee request. *See In re AT&T*, 455 F.3d at 179 (holding that the trial court properly concluded that the settlement was an "excellent" result in light of the risks).

    2.    **The presence or absence of substantial objections to the request for fees**

The second factor focuses on the reaction of the Class to the requested attorney fees. As courts in this District have found in similar cases, the absence of any objection strongly supports approval. *See Diet Drugs*, 553 F. Supp. 2d  at 473 (dearth of objections "signifies that the requested award has been viewed by interested parties to this action as fair"); *Serrano*, 711 F. Supp. 2d at 418 ("no Class Member has objected to the settlement or to the requested fee, which evidences both a satisfactory result and a reasonable fee."); *see also In re Rite Aid*, 396 F.3d at 305 (affirming district court's finding that the filing of just two objections weighed in favor of awarding fee).

The Notice of Proposed Class Action Settlement approved by this Court was mailed to the 913 Class Members and stated that Class Counsel would apply for an award of fees and expenses out of the settlement proceeds "not to exceed $925,000", plus up to $20,000 in expenses. (*See* Exhibit 2, Neiman Aff't; Exhibit 3, Notice).  The disclosure about the fee request was conspicuously stated both on the front cover of the Notice as well as in its own numbered subsection.  (*See* Exhibit 3).  In response to the mailed Notice, there have been <u>zero</u> objections to the settlement generally or to the fee request particularly.  (Exhibit 2).  This strongly favors approval. *Serrano*, 711 F. Supp. 2d at 418.

### 3. The skill and efficiency of Class Counsel

The "single clearest factor reflecting the quality of Class Counsels' services to the Class are the results obtained." *In re Safety Components Sec. Litig.*, 166 F. Supp. 2d 72, 96 (D.N.J. 2001). Related factors include "the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 465 (E.D. Pa. 2008) (internal citations and quotations omitted). The goal under *Gunter* is to ensure "that competent counsel continue to undertake risky, complex and novel litigation" for the benefit of large numbers of Class Members who might otherwise lack reasonable access to justice. *Gunter*, 223 F.3d at 198.

The case was settled relatively quickly, (with a settlement in principle reached about 10 months after the removal to this Court), however this litigation was by no means facile. The difficulties faced, and the circumstances surrounding the viability of the defendant and the denial of insurance coverage, dictated a relatively speedy resolution to this case. Importantly, the negotiation of attorneys' fees in this Action was conducted only after counsel for the parties to this Action reached agreement on all aspects of the settlement consideration and benefits that the Class would receive in the Settlement. *See, e.g., In re Prudential Insur. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 542 (D.N.J. 1997), aff'd, 148 F.3d 283, 335 (1998) ("[t]he parties negotiation of attorneys' fees was completely appropriate and followed final settlement negotiations."). Class Counsel, in its experienced judgment, believes that further litigation would likely not have led to a net better result for the Class.   (*See* Flitter Certification, ¶ 29, filed herewith).

Here, Class Counsel have obtained a very substantial and definite cash and cash-equivalent benefit for over 900 consumers in a relatively quick and efficient manner without the in-fighting, jockeying and delay that sometimes arise in Class action cases. In the absence of this litigation, most of the Class Members would have lacked any reasonable access to legal representation to pursue their small-value consumer claims. As set forth in the Certifications of counsel submitted herewith, Class Counsel have deep experience litigating consumer cases and Class actions and are recognized as having expertise in the field. (*See* Certifications, Exhibits 8-11).

Class Counsels' experience and skill are also evident in the attainment of this substantial settlement against highly capable opponents. *See In re Warfarin Sodium Antitr. Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (Class Counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"). Throughout this case, the Defendant has been represented by highly skilled and experienced attorneys from Morgan Lewis & Bockius, a very prominent Philadelphia-based law firm. *See, e.g., Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsel's work"). The fact that Class Counsel negotiated such a favorable settlement with high caliber legal advocates on the other side militates in favor of approval of this Motion.

4.      **The complexity and duration of the litigation**

Complexity and duration of the litigation is another factor the Court should consider in analyzing attorneys' fees. *See In re General Motors*, 55 F.3d at 821; *Varacallo v. Massachusetts*

*Mut. Life Ins. Co.*, 226 F.R.D. 207, 249 (D.N.J. 2005) (describing complexity of consumer class action).

Class Counsel faced early difficulties in choosing a forum and endeavoring to keep this class action in Pennsylvania after Flagship removed. The Court held an evidentiary hearing on whether CAFA jurisdiction was met and whether a transfer to a Texas District Court would be appropriate under 28 U.S.C. § 1404. In relation to the Court's *sua sponte* inquiry into a potential transfer, Class Counsel briefed the key issues in the case and the authorities appertaining to discretionary § 1404 transfer. (Doc. No. 11). At the close of the hearing, the Court asked counsel to brief whether there were any substantive issues of first impression. Hartt asserted the governing law was sufficiently settled in the Texas jurisprudence. (Doc. No. 20). In determining not to transfer, the Court found the applicable law sufficiently well-settled. *See Hartt v. Flagship Credit Corp.*, 2010 WL 2736959 (E.D. Pa. July 8, 2010).

One of the more important issues in this litigation and in settlement negotiations was the issue of claimed deficiency balances. Flagship maintained that most Class Members, like Mr. Hartt, had an outstanding deficiency reflecting the spread between what his car brought at auction and the balance of any debt owed to Flagship. In its Answer and in the briefing, Flagship insisted it could use these deficiency balances as a set-off to any class recovery of statutory damages. Plaintiff has asserted from the start that Texas was an "absolute bar" state – i.e., a jurisdiction where a secured creditor who fails to comply with certain requirements of UCC Article 9, including its notice provisions, cannot sue for any deficiency after the sale of the collateral. When presented with this question, the Court held (at least preliminarily) that Texas was an absolute bar state. *Hartt*, 2010 WL 2736959 at *3. However, Flagship continued to believe – throughout the Mediation and settlement negotiations period – that set off would be

appropriate, and that the Court's opinion was a mere interlocutory ruling subject to revision upon further briefing.

Flagship also contended throughout the case that many borrowers could be excluded from the Class for one or more reasons. Discovery revealed that there were a dozen slightly different notices used by Flagship during the Class period – many of which violated the UCC's requirements, and others that did not. Intensive review of each consumer's file was therefore required, and Class Counsel reviewed the files of over 1,230 individuals and <u>over 70,000 pages</u> of documents related thereto. Indeed, a large portion of the lawyers' time – over 430 hours – was devoted to review, analysis and categorizing the copious documents from the loan files. This was a substantial undertaking, in a compressed period of time. The firm added to staff an outside attorney, Dwight DeKeyser, on a contract basis to review documents and catalogue his findings in an Excel spreadsheet for class certification and mediation purposes. Other lawyers at Lundy, Flitter, as well as law clerks assisted in the document review.

A similarly intensive review was required to refute Flagship's attack on the make-up of the Class; the finance company maintained throughout the case that issues such as arbitration clauses, bankruptcy filings, and waiver of statutory notice depleted the size of the Class. Then, shortly before mediation, questions about Flagship's financial stability and whether the asserted violations were covered by insurance came to a head. Class Counsel felt it appropriate to spend some time informing itself as to whether there would (likely) be coverage, or not,[4] because this bore on collectability of any award.

---

[4]      Of note, the policy issued to Flagship by Indian Harbor Ins. Co. specifically provides coverage for unlawful repossession practices. Apparently the carrier believes this suit falls under one or more policy exclusions. That is unresolved at present and, as noted *infra*, is currently the subject of a declaratory action in the federal court in Texas. *See infra* at p. 17.

And while the case does not present complex issues of damages causation under the statute, the case is and was largely a novel one.  To Class Counsel's knowledge, no Class action had ever been asserted or certified for repossession-notice violations under the Texas Code – much less in a court sitting in Pennsylvania.  Any substantive or procedural challenges are put to bed by a solid classwide settlement.

Each of the above factors added complexity, directed Class Counsel's tactics in this case, and informed its settlement strategy heading into mediation.  Counsel weighed the amount of cash each Class Member might receive, the value of debt cancellation, and consulted an expert to examine the value of credit report correction to the Class Members.  The resultant Settlement Agreement attained relief which, in many ways, exceeds the quantum of relief available at trial in this matter.  The effort to forge a settlement that combined substantial cash _and_ debt forgiveness _and_ credit report correction was not simple and in some ways added a complexity that a "litigation only" approach would not have.  The debt forgiveness also raised income tax issues.  Counsel reviewed arcane tax regulations and private letter rulings and consulted with CPAs to conclude that no "identifiable event" would occur to trigger a 1099 (with attendant phantom income to the Class Members).

It is also noteworthy that final approval by no means ends the complexities (or work) to be faced by Class Counsel.  If recent experience is any indication of the post-approval work that is to follow in this case, Class Counsel can expect to deal with a stream of phone calls and letters from Class Members related to: non-receipt or incorrectly addressed checks, credit reporting that had not yet been corrected, judgments that had not yet been satisfied, and the like.  (_See_ Ex. 8, Flitter Cert. at ¶ 26, attesting to continued post-approval work in a recent case).  Assuring the settlement terms are carried out will require additional work, attention and monitoring by Class

Counsel to ensure that all Class Members' credit reports are corrected as required. Class Counsel will not make any additional application for fees after Final Approval. Hence, this factor supports the fee petition.

### 5.   The risk of nonpayment

During the course of this litigation, Flagship's viability and an insurance coverage dispute threatened the Class's potential for recovery. Flagship's witnesses testified that the firm has had major layoffs, that it sold off or returned most of its portfolio of loans and its future was uncertain. (*See* Depo. of Dan Dissen, Sept. 20, 2010, pp. 25-27, Exhibit 6 hereto). Immediately prior to mediation, Class Counsel was alerted to a coverage dispute between Flagship and its insurance carrier – that resulted in the filing by Flagship in Texas of a complaint for declaratory judgment on coverage. *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, U.S.D.C. S.D. Tx. No. 4:10-CV-3616.

Additionally, Class Counsel undertook this action on an entirely contingent fee basis, assuming a substantial risk that counsel would have to devote a significant amount of time and incur expenses in prosecuting this action without any assurance of being compensated for their efforts. Courts here and across the country have consistently recognized that the risk of receiving little or no recovery is a factor in considering an award of attorneys' fees. *See, e.g., Serrano,* 711 F. Supp. 2d at 423; *Warner Communications,* 618 F. Supp. at 747 (S.D.N.Y. 1985) (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income P'ships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994).

The risk of no recovery in an unusual case of this type is real. There are many class actions in which counsel have expended thousands of hours, incurred substantial expenses, and yet received no remuneration despite their diligence and expertise. Class Counsel are aware of many hard-fought lawsuits in which, because of the discovery of facts unknown when the case was commenced, or changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, or an insolvency, excellent efforts of Class Counsel produced no fee. Indeed, obtaining a favorable jury verdict is not a guarantee of success. *See, e.g., Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). Notwithstanding this very real specter of nonpayment, Class Counsel have committed many hundreds of thousands of dollars worth of time and expense to the vigorous and successful prosecution of this action.

While Plaintiff remains confident in the strength of his case, and of his ability to prove damages, this action, indeed all litigation, involves substantial risks and the ultimate outcome cannot be predicted with certainty, especially in a case that in some ways was novel. Accordingly, the risks of non-payment in this case weigh in favor of approving the fees sought in this Motion.

### 6. The amount of time devoted to the litigation

Class Counsel have devoted a significant amount of time litigating this action over the past 16 months. Through the filing of the Motion, March 30, 2010, Class Counsel spent over 1,245 hours (to date) prosecuting this case on behalf of the Class, for an aggregate lodestar of

over $445,000.00, and have incurred $17,077.92 in expenses.   (Flitter and Tomlinson Certifications at Exhibits 8-9).  The time incurred is broken down as follows:

### Lundy, Flitter, Beldecos & Berger, P.C.

| Lawyer | Hours | Hourly Rate | Amount |
|---|---|---|---|
| Cary L. Flitter | 435.70 hours | $555.00 | $241,814.00 |
| Theodore E. Lorenz | 51.5 hours | $410.00 | $ 21,115.00 |
| Andrew M. Milz | 257.70 hours | $245.00 | $ 63,137.00 |
| Dwight DeKeyser | 216.60 hours | $245.00 | $ 53,067.00 |
| Joan M. Raughley | 115.80 hours | $160.00 | $ 18,528.00 |
| Susan E. Hart | 17.50 hours | $160.00 | $  2,800.00 |
| Law Clerk | 77.1 hours | $160.00 | $ 12,336.00 |
| **TOTAL AMOUNT OF FEES EXPENDED** | | | $412,797.00 |

### Law Office of Richard Tomlinson

| Lawyer | Hours | Effective Rate | Amount |
|---|---|---|---|
| Richard  Tomlinson | 62.1 hours (rounded) | $530.00 | $32,901.00 |
| **TOTAL AMOUNT OF FEES EXPENDED** | | | $32,901.00 |

The lion's share of the time incurred (over 430 hours) was devoted to document and data analyses in preparation for class certification and proof of class-wide damages.  This time was incurred largely by Andrew M. Milz, an associate attorney at the Lundy Flitter firm, and two individuals hired by the firm for the purpose of document review: Dwight DeKeyser, Esquire and Dawn Pinault, a law clerk and student at Widener University School of Law.  (*See* Certifications of Flitter, Exhibit 8; Milz, Exhibit 11; and DeKeyser, Exhibit 12 attached hereto). Ultimately, the document review was integral in preparing for mediation and defining the framework for a suitable and defensible class-wide settlement.

Time was also spent by the Lundy Flitter firm on the following important tasks:

a. Client intake, fact investigation, meeting Plaintiff in Texas, management of the case up to and including the filing of the Complaint: approximately 62 hours;

b. Legal research, briefing, and argument related to jurisdiction the Court's transfer inquiry: approximately 55 hours;

c. Preparing for and attending depositions: approximately 77 hours;

d. Preparing for, briefing and attending the successful October 7, 2010 mediation session at JAMS: approximately 73 hours;

e. Drafting the settlement documents, Class Notice, proposed Orders for preliminary and final approval, retaining a Class Administrator and all work attendant to moving for preliminary approval of the settlement: approximately 149 hours;

f. Drafting the moving papers, handling class inquiries, communicating with the class administrator, and all work attendant to attaining final approval of the class settlement: approximately 86 hours.

The remainder of the time expended by the firm (approximately 240 hours) was in regards to: preparing and filing an Amended Complaint; drafting a motion to strike counterclaim; preparing and serving discovery; receiving and processing documents attained through discovery; communicating with co-counsel, opposing counsel, the Court, and class administrator; conferences, strategy, miscellaneous legal research and memoranda related to topics arising throughout the litigation; preparation of exhibits, and other necessary tasks. (Exhibit 8, Flitter Certification at ¶25). Similarly, the Tomlinson Certification speaks to the breakdown of the time incurred by that firm. (Exhibit 9 at ¶8).

In light of these analyses, the document discovery completed, the depositions taken, the legal briefing on the substantive issues at the heart of the case, the detailed preparation for Mediation, and the extensive work devoted to negotiating and structuring the settlement, and future work, this factor supports Class Counsels' fee request.

### 7. Awards in similar cases

In comparing the award requested in this action with amounts awarded in similar actions, a court should:  (1) compare the actual award requested to other awards in comparable settlements; and (2) ensure that the award is consistent with what an attorney would have received if the fee were negotiated on the open market.  *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, * 30 (D.N.J., Sept. 13, 2005).

#### a.      The fee requested here is similar to fees awarded in comparable settlements

A comparison of the fee sought in the Fee Petition with fees awarded in recent class actions militates strongly in favor of granting the Fee Petition.  Courts routinely award fees in common fund cases in the range of one-third of the total recovery.  *See, e.g. In re Rite Aid*, 396 F.3d at 306-07 (review of 289 settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one- third"); *Moore v. Comcast Corp.*, 2011 WL 238821, *5 (E.D. Pa. Jan. 24, 2011) ("33% of the monetary value of the settlement … is comparable to the average fee customary in this circuit."); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, at *14 ("The above figures are in accord with a recent Federal Judicial Center study that found that in federal class actions generally median attorney fee awards were in the range of 27 to 30 percent.").

The percentage fee requested in this case is approximately 6.8% of the $13.785 million total value of the <u>monetary</u> relief obtained by the settlement ($2.5 million cash + $11.285 million

in cancelled deficiencies).  As discussed above, the actual value of this settlement is higher when considering the equitable-type relief of credit repair (and the satisfaction of any outstanding judgments) as described in the expert report of David Stivers, Exhibit 7 hereto.  Even evaluating the requested fee as a percentage of the $2.5 million cash fund <u>alone</u> – which does not adequately evaluate the extent of the settlement value – reveals a percentage of approximately 37%.  This is just slightly higher, but still well within the range of reasonable fees requested and awarded by courts in this Circuit.  *See Cendant*, 243 F. 3d at 736 (fee awards range from 19% to 45%); *Blackman v. O'Brien Envtl. Energy, Inc.*, 1999 WL 397389 (E.D. Pa. May 12, 1999) (35% fee awarded); *In re ValueVision Int'l Sec. Litig.*, 957 F. Supp. 699, 700 (E.D. Pa. 1997) (34% fee awarded).   Class Counsel's fee request is, therefore, reasonable and within the range routinely awarded within this Circuit, this District, and across the country.

> **b.**     **The fee requested is consistent with a privately negotiated contingent fee in the marketplace**

The award sought will fairly and reasonably compensate Class Counsel for its successful efforts on behalf of the Class in a manner that reflects how counsel would be compensated for similar services in non-representational litigation.  *See Diet Drugs*, 553 F. Supp. 2d at 482 ("the goal of the fee setting process is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order") (quotes and citations omitted); *see also In re Ikon*, 194 F.R.D. at 194 (stating that "in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

Here, Class Counsel successfully recovered a very significant amount for each Class Member, most of whom would not have had the means, wherewithal, knowledge or initiative to pursue their individual rights with respect to a modest individual claim.  Had each proceeded on

an individual basis, each would have confronted either a contingent fee agreement comparable to or higher than that represented by the instant fee petition or an hourly retainer far higher than the amount sought in this petition.  Given these market realities, Class Counsels' requested fee is consistent with and indeed below the range of privately negotiated contingent fees.

These, and all the aforementioned factors support the requested fee award, which should be granted under the percentage of recovery approach.

### C. Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

Even though the Third Circuit has a clearly established preference for calculating attorneys' fees using the percentage of the fund approach, a comparison using the lodestar calculation demonstrates that the fees requested are fair and reasonable.  *See First State Orthopaedics*, 534 F. Supp. at 524 ("The Court of Appeals requires the district court to cross-check the percentage award against the 'lodestar' award to ensure the reasonableness of the fee.").  To determine an attorney's lodestar, the Court multiplies the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer.  *Id.* "Lodestar multipliers ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Id.* (citing cases).

The Third Circuit has instructed that "the lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid*, 396 F.3d at 306-07.  According to the Court in *Rite Aid*, "the lodestar cross-check is 'not a full-blown lodestar inquiry' and a court 'should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required in a lodestar

jurisdiction.'" *Id.* (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)).

Plaintiff sets forth summaries of the time expended in Subsection IV.B.6. above.[5]   As reflected above and in the Certifications of Cary L. Flitter and Richard Tomlinson, Class Counsel's aggregate lodestar is just over $445,000.00.   At $925,000.00 in fees requested, this results in a multiplier of about 2.08.   (Flitter and Tomlinson Certifications, Exhibits 8 and 9). Such a result is commonly approved as reasonable under Third Circuit standards.   Indeed, the requested multiplier is lower than the multiplier of 3.0 articulated by the Third Circuit in *In re Cendant*, 243 F.3d at 734. An examination of approved multipliers reveals that the multiplier requested here is well within the appropriate range for approval. *See, e.g., First State Orthopaedics*, 534 F. Supp. 2d at 524 (approving 1.9 multiplier); *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F.Supp.2d 322 (E.D. Pa. 2007) (Padova, J.) (approving 2.5 multiplier); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350, *4 (approving a 2.66 multiplier); *In re Buspirone Antitrust Litig.*, MDL Docket 1413 (S.D.N.Y. Order of April 7, 2003 (awarding fee equal to multiplier of 8.46); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J.), aff'd, 66 F.3d 314 (3d Cir. 1995) (multiplier of 9.3 times hourly rate); *In re Rite Aid Corp. Secs. Litig.*, 146 F. Supp. 2d 706, 736 (E.D. Pa. 2001) (multiplier of over 6).

To inform the Court's application of the lodestar cross check, Class Counsel have included evidence of the proper billing rate to calculate their lodestars in this matter.   In particular, Class Counsel have filed herewith their own certifications (Exhibits 8 through 11)[6] as

---

[5]      Counsel's detailed timesheets (for the Lundy Flitter and Tomlinson firms) can certainly be made available to the Court upon request.

[6]      Certifications of support staff are also appended at Exhibits 12, 15-16.

well as a declaration from experienced class action counsel in the Philadelphia geographic region to the prevailing hourly rates for consumer class action lawyers and opining the Class Counsels' rates are appropriate. (*See* Exhibit 13, Certification of Michael J. Boni). Class Counsel further request that the Court take judicial notice, pursuant to Fed. R. Evid. 201, of the 2010 Survey of Hourly Billing Rates conducted by THE NATIONAL LAW JOURNAL ("NLJ"), which observes that senior partner rates of large Philadelphia law firms (which typically defend class actions), are in the $600-700 per hour range, which is above the range sought by Class Counsel this case. (*See* Exhibit 17 hereto). The NLJ survey was most recently cited approvingly in a fee award in this District in *Harlan v. NRA Group, LLC*, 2011 WL 813961 (E.D. Pa. March 02, 2011) (consumer protection action under FDCPA). Indeed the rates of Class Counsel sought here were approved on contest by Judge Rufe in *Harlan*. Plaintiff recognizes that since this is not a statutory fee-shifting case, the inquiry into rates and lodestar is more limited. Nonetheless, this application readily passes muster under the recommended lodestar cross-check analysis.

The requested fees (i) have not met with any objection from a Class Member, (ii) satisfy all the *Gunter* factors, (iii) comport with market measures for typical contingent fee representation, and (iv) reflect a lodestar multiplier that is well within the range of multipliers typically approved by courts in this District and in the Third Circuit. Accordingly, Class Counsel respectfully submit that this Fee Petition should be approved.

### D.   Reimbursement of Class Counsel's Expenses

It is axiomatic that "[c]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the

prosecution of the case." *In re Cendant Corp.*, 232 F. Supp. 2d 327, 343 (D.N.J. 2002); *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995).

Class Counsel, in the prosecution of this case, expended $17,077.92 in costs, as summarized in the Flitter and Tomlinson Certifications -- $16,002.92 by Lundy, Flitter, Beldecos & Berger, P.C. and $1,075.00 by the Tomlinson office.  (*See* Flitter Certification, Exhibit 8; Tomlinson Certification, Exhibit 9).  These expenses reflect costs for document copying, electronic legal research, court fees, travel and lodging expenses, meals, mail, expert services and long distance telephone expenses.  *Id.*  Reimbursement of similar expenses is routinely permitted.  *See, e.g., Moore*, 2011 WL 238821 at *5; *Serrano*, 711 F. Supp. 2d at 423-24; *see also In re Datatec*, 2007 WL 4225828, *9 (D.N.J. Nov. 28, 2007) (approving expenses for "costs expended for the purposes of litigating this action, including costs associated with experts, consultants, investigators, legal research, mediation, meals, hotels, transportation, word processing, court fees, mailing, postage, telephone, and the costs of giving notice").[7]

The costs expended $16,002.92 were modest and necessarily incurred to prosecute the case.  They are:

| **Date** | **Disbursement** | **Amount** |
|---|---|---|
| 11/16/09 | Federal Express to Glynn Hartt | $  20.00 |
| 11/20/09 | Westlaw (11/16/09 to 11/30/09) | $  36.82 |
| 12/10/09 | Prothonotary of Phila. County – File Complaint | $ 580.42 |
| 12/16/09 | Sheriff of Del. Co. – Service of Complaint | $  52.00 |
| 12/22/09 | Westlaw (12/1/09 to 12/31/09) | $  18.54 |
| 1/7/10 | Metro Filing Services – (11/26/09 to 12/25/09) Copying Documents | $  50.00 |

---

[7] The cost of the Class Administrator was allowed from the fund and is not addressed here.

| 1/18/10 | Federal Express to Jessica at Del. Co. Sheriff's Office | $ 17.00 |
|---|---|---|
| 3/31/10 | Westlaw (3/16/10 to 3/31/10) | $ 30.10 |
| 4/19/10 | Westlaw (4/1/10 to 4/15/10) | $ 28.52 |
| 5/24/10 | Parking (4/12/10) | $ 15.00 |
| 7/26/10 | Federal Express to Glynn Hartt | $ 21.00 |
| 7/27/10 | Clerk, U.S.D.C. – Transcript from 4/13/10 Hearing | $ 24.00 |
| 7/28/10 | Federal Express from Glynn Hartt | $ 22.00 |
| 7/29/10 | Federal Express to J. P. Lavelle, Jr., Esq. | $ 17.00 |
| 8/5/10 | Cary Flitter – Reimbursement for Jessica Sampson travel expenses(Texas parking, local transportation & meals) | $ 250.00 |
| 8/5/10 | Cary Flitter – Reimbursement for Glynn Hartt travel expenses(local transportation & meals) | $ 150.00 |
| 8/17/10 | Timko Court Reporting – Bertoncini deposition | $ 522.50 |
| 8/19/10 | Continental Airlines – Phila/Houston(2 tickets)(7/27/10)(Sampson & Hartt, Roundtrip w/lodging) | $1,536.98 |
| 8/19/10 | Parking (8/1/10 and 8/2/10)(Client meeting and deposition) | $ 53.25 |
| 8/19/10 | Addt'l lodging, Phila. (for deposition)(8/2/10)(G. Hartt & J. Sampson) | $ 159.58 |
| 8/19/10 | Parking (8/5/10) | $ 32.50 |
| 8/24/10 | Westlaw (8/1/10 to 8/15/10) | $ 20.12 |
| 9/7/10 | James DeCrescenzo Reporting, LLC – Transcripts of J. Sampson & G. Hartt | $ 647.75 |
| 9/14/10 | JAMS – ½ billing of $2750 plus case mgmt. fee of $275(mediation fees) | $3,025.00 |

| 9/28/10 | Timko Court Reporting – Daniel Dissen Deposition | $ 167.75 |
|---|---|---|
| 9/30/10 | Edward Flitter – Courier service to deliver mediation memo package to JAMS | $ 55.00 |
| 9/30/10 | Kinko's – copying, binding & tabbing of mediation memo & exhibits | $ 139.22 |
| 9/30/10 | Federal Express package to Wm. H. Daniel, Esq. | $ 41.00 |
| 9/30/10 | Federal Express package to R. Tomlinson, Esq. | $ 41.00 |
| 9/30/10 | Westlaw (9/16/10 to 9/30/10) | $ 52.64 |
| 10/18/10 | JAMS, Inc. – payment of invoice (mediation fees) | $1,100.00 |
| 10/19/10 | Westlaw (10/1/10 to 10/15/10) | $ 69.61 |
| 10/19/10 | Westlaw (10/15/10 to 10/31/10) | $ 12.72 |
| 10/25/10 | Parking (10/7/10) | $ 24.00 |
| 10/25/10 | Continental Airlines (10/7/10)(G. Hartt air to Phila.) | $ 390.70 |
| 10/25/10 | Expedia (10/7/10)(G. Hartt lodging for mediation) | $ 298.94 |
| 10/25/10 | Continental Airlines (addt'l air for return flight) | $ 217.90 |
| 10/25/10 | Parking (9/20/10) | $ 29.00 |
| 10/25/10 | Fedex Office (9/30/10)(bulk reproduction) | $ 139.22 |
| 10/25/10 | Parking (10/7/10) | $ 15.00 |
| 11/23/10 | Westlaw (11/1/10 to 11/30/10) | $ 107.08 |
| 11/29/10 | Parking (10/14/10) | $ 15.00 |
| 12/20/10 | Staples (11/18/10) (document reproduction & binding, etc. – motion for preliminary approval) | $ 114.56 |
| 1/31/11 | Parking (12/14/10) | $ 16.25 |
| 1/31/11 | Westlaw (12/1/10 to 12/31/10) | $ 111.10 |

| 2/18/11 | Westlaw (1/1/11 to 1/31/11) | $    82.00 |
|---------|-----------------------------|------------|
| 3/21/11 | US Airways/Expedia (2/9/11)(G. Hartt air & lodging for final approval hearing) | $  501.72 |
| 3/21/11 | Westlaw (2/1/11 to 2/28/11) | $    95.43 |
| 3/29/11 | Westlaw (3/1/11 to 3/29/11) | $  117.50 |
| 3/30/11 | Staples (copying & binding of motion for final approval & fees and appendix)(est.) | $  150.00 |
| 3/30/11 | Federal Express to J. Lavelle, Esq., W. Daniels, Esq., & R. Tomlinson, Esq. of final motion documents(est.) | $  120.00 |
| 3/30/11 | David Stivers, expert report fee | $ 3,879.50 |
|         | Bulk photocopying expenses | $  569.00 |
| **TOTAL EXPENSES (LUNDY, FLITTER)** | | **$16,002.92** |

## SUMMARY

1. Court Fees & Costs            $   706.42
2. Deposition Transcripts        $1,338.00
3. Travel/Lodging/Related        $3,505.82
4. Bulk Copying, Binding, etc.   $1,112.00
5. Westlaw                       $   782.18
6. JAMS/Mediation Expenses       $4,125.00
7. Miscellaneous (Courier, Parking, Fedex)  $   554.00
8. Expert Fees (Stivers)         $3,879.50

Mr. Tomlinson expended $1,075.00 in costs including copying, electronic research service, travel expenses and lodging. *See* Tomlinson Certification, Exhibit 9, ¶ 9. Aggregate expenses for the two firms sum to $17,077.92.

These expenses were critical to Class Counsel's success in achieving the settlement and were reasonable and appropriately incurred. Class Counsel's application for reimbursement of these expenses should, therefore, be granted.

## V.    <u>CONCLUSION</u>

For the reasons detailed herein, Plaintiff Glynn Hartt respectfully requests that this Court grant his Motion for the Award of Attorneys' Fees and Expenses.

Date:   3/30/11                                        /s/ Cary L. Flitter
                                                      CARY L. FLITTER
                                                      THEODORE E. LORENZ
                                                      ANDREW M. MILZ

                                                      LUNDY, FLITTER, BELDECOS &
                                                      BERGER, P.C.
                                                      450 N. Narberth Avenue
                                                      Narberth, PA  19072
                                                      (610) 822-0782

                                                      RICHARD TOMLINSON
                                                      2601 Gramercy #1203
                                                      Houston, TX 77030
                                                      (713) 627-2100

                                                      **Attorneys for Plaintiff and the Class**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLYNN HARTT, individually and on behalf
of all others similarly situated,

     Plaintiff

   vs.            CIVIL ACTION NO. 10-CV-00822(NS)

FLAGSHIP CREDIT CORPORATION,

     Defendant.

## CERTIFICATE OF SERVICE

  I hereby certify that on March 30, 2011, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which sent notification of such filing to:

Marc J. Sonnenfeld, Esquire
John P. Lavelle, Jr., Esquire
Iddo Harel, Esquire
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103-2921

  Said document is available for viewing and downloading from the ECF system

Date: 3/30/11           */s/Cary L. Flitter*
                  CARY L. FLITTER